Peter Johnson, SBN No. 165523
Law Office of Johnson & Johnson
801 Ygnacio Valley Rd., Ste. 230
Walnut Creek, CA 94596
(t) 925.952.8900
(f) 925.952.8902
jjlaw2@earthlink.net

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JOHN BURNS, TAMMY BURNS, BOBBY LAWRENCE, ESTATE OF CHARLES BURNS by TAMMY BURNS, Personal Representative of the Estate of Charles Burns.

       Plaintiffs,

       v.

CITY OF CONCORD, CHIEF GUY SWANGER individually and in his official capacity, Detective CHRIS LOERCHER, individually and in his official capacity, Officer MIKE HANSEN, individually and in his official capacity, Officer STEVEN WHITE, individually and in his official capacity, Officer BRAD GIACOBAZZI, individually and in his official capacity, officer DANNY SMITH, individually and in his official capacity, Officer EDUARDO MONTERO, individually and in his official capacity, Officer STEVEN PRICE, individually and in his official capacity, Officer JASON PASSAMA, individually and in his official capacity, Officer PAUL MIOVAS, individually and in his official capacity, Officer MATT CAIN, individually and in his official capacity, Officer MATTHEW SWITZER, individually and in his official capacity, COUNTY OF CONTRA COSTA, DISTRICT ATTORNEY MARK PETERSON in his individual and official capacity, Deputy District Attorney BARRY GROVE, individually and in

Case No. C14-00535LB

SECOND AMENDED COMPLAINT FOR DAMAGES

DEMAND FOR JURY TRIAL

his official capacity,  CITY OF ANTIOCH, CHIEF ALLAN CONTADO in his official capacity, JOHN CONATY, individually and in his official capacity, TOM PARODI, individually and in his official capacity, JAMES STENGER, individually and in his official capacity, and DOES 1 through 60, inclusive.

Defendants.

## I.   JURISDICTION and VENUE

1.  This is an action for monetary damages brought pursuant to Title 42 U.S.C. section 1983, and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution and under the common law of the State of California, and the California State Constitution Article 1 Section 28, against the City of Concord (Concord Police Department), and against Concord Police Officers, and the Contra Costa County (Contra Costa District Attorney's Office) and it representatives, and the City of Antioch (Antioch Police Department) and Antioch Police Officers.

2.  Jurisdiction is based on the fact that this case involves a federal question regarding violation of civil rights under federal law under the 4th and 14th amendments to the US Constitution, 42 U.S.C. section 1983, 1988 and under 28 U.S.C. section 1331 and 1343; The court has supplemental jurisdiction under 28 USC section 1367(a);

## II.  SUMMARY OF ACTION

3.  This action arises out of the killing of Charles Burns by the Concord Police Department; the unlawful detention and arrest of Charles Burns and Bobby Lawrence by the Concord Police Department, Antioch Police Department and Contra Costa District Attorney's Office; and the subsequent cover-up of the unlawful police activity.

a.   On May 10, 2013 Concord Police Officers used excessive, unjustified and unreasonable lethal force against Charles Burns, killing him;

b.   On the same date and time Concord Police Officers used excessive, unjustified and unreasonable force in seizing plaintiff, Bobby Lawrence; and with the assistance of the Antioch Police Department and Contra Costa District Attorneys office subjected him to an unjustifiable prolonged detention and arrest in violation of the 4th Amendment of the U.S. Constitution.

c.   The unlawful use of excessive force and subsequent illegal detention and arrest occurred in Antioch, Contra Costa County, State of California.

d.   Following the unjustifiable killing of Mr. Burns, the defendants listed herein engaged in a course of conduct, acting in concert with one another, to conceal the true facts surrounding the death of Charles Burns and the unlawful detention and arrest of Bobby Lawrence.

### III. PARTIES

4.   Charles Burns is deceased. Prior to being killed by the police on May 10, 2013 he was a 20 year old male residing in Contra Costa County;

5.   Plaintiff, Bobby Lawrence is an adult male and resided in Bay Point, Contra Costa County at the time of the subject incident;

6.   Plaintiff, Tammie Burns, the natural mother of deceased Charles Burns was at all times an adult resident of Bay Point, Contra Costa County;

7.   Plaintiff, Estate of Charles Burns, is represented by Tammie Burns appointed Personal Representative of the Estate of Charles Burns;

8. Plaintiff, John Burns, is the natural father of deceased Charles Burns and was at all times relevant an adult resident of Bay Point, Contra Costa County;

9. Concord Police Officers Personally Involved in Killing of Charles Burns: Special Investigations Bureau;

    a. Chris Loercher, Detective Concord Police Department, Special Investigations Bureau (hereinafter, SIB); Loercher admitted to shooting Charles Burns. Loercher is being sued in his individual and official capacity.  Loercher's conduct as alleged herein occurred during the course and scope of his duties as a police officer for the City of Concord. Loercher acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed persons herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

    b. Unnamed Officer (sued herein as Doe 1), (the parties have agreed that this officer will initially and temporarily be sued "unnamed" as a doe defendant due to ongoing operations involving other officers outside of Concord Police Department unrelated to this case, which could be jeopardized with his disclosure as a police officer; It is understood and agreed that his identity will be disclosed during the course of this action) Unnamed Officer is a Detective Concord Police Department, Special Investigations Bureau (SIB); Unnamed Officer admitted to shooting Charles Burns.  Unnamed Officer is being sued in his individual and official capacity. Unnamed Officer's conduct as alleged herein occurred during the course and scope of his duties as a police officer for the City of Concord. Unnamed Officer acted on behalf of the City of Concord, individually and in

concert with other defendants named and unnamed persons herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

c.  Defendant, Mike Hansen at all times relevant herein was a Police Officer with the Concord Police Department, Special Investigations Bureau (SIB).  He was the supervising officer related to the operation leading to the killing of Charles Burns.  He is sued in his individual and official capacity.  Hansen's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Hansen acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

d.  Defendant, Steven White, at all times relevant herein was a Police Officer with the Concord Police Department, Special Investigations Bureau (SIB). White is a potential shooter in the killing of Charles Burns, but in any event personally involved in the operation leading to Burns' death and the subsequent cover-up. He is sued in his individual and official capacity.  White's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  White acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

e.  Defendant, Brad Giacobazzi at all times relevant herein was a Police Officer with the Concord Police Department, Special Investigations Bureau (SIB).  Giacobazzi is a potential shooter in the killing of Charles Burns, but in any event personally involved in the operation leading to Burns' death and the subsequent cover-up. He is sued in his individual and official capacity.  Giacobazzi's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Giacobazzi acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

f.  Defendant, Danny Smith at all times relevant herein was a Police Officer with the Concord Police Department, Special Investigations Bureau (SIB).  Smith is a potential shooter in the killing of Charles Burns, but in any event personally involved in the operation leading to Burns' death and the subsequent cover-up. He is sued in his individual and official capacity.  Smith's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Smith acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

10. Concord Police Department Officers personally involved in killing of Charles Burns, Special Enforcement Team, (SET);

a.  Defendant, Eduardo Montero at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (hereinafter, SET).  Montero was personally involved in the operation leading to Burns' death and the subsequent cover-up. He is sued in his individual and official capacity. Montero's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Montero acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

b.  Defendant, Steven Price at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (SET).  Price was personally involved in the operation leading to Burns' death and the subsequent cover-up. He is sued in his individual and official capacity.  Price's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Price acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

c.  Defendant, Jason Passama at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (SET).  Passama was personally involved in the operation leading to Burns' death and the subsequent cover-up. He is sued in his individual and official capacity.  Passama's conduct as

alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Passama acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

d.   Defendant, Paul Miovas at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (SET).  Miovas was personally involved in the operation leading to Burns' death and the subsequent cover-up. He is sued in his individual and official capacity.  Miovas' conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Miovas acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

e.   Defendant, Matt Cain at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (SET).  Cain was personally involved in the operation leading to Burns' death and the subsequent cover-up. He is sued in his individual and official capacity.  Cain's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Cain acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

11. Defendant Tom Parodi at all times relevant herein was a Detective with the Concord Police Department. Parodi was one of the 4 individuals responsible for supervising the illegal cover-up operation of the intentional killing of Charles Burns.  He is sued in his individual and official capacity.  Parodi's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Parodi acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

12. Defendants, DOES 2 through 20 are Concord Police Officers, were at all times relevant to this Complaint duly appointed and acting officers of the police department of the City of Concord.  They are sued in their individual and official capacities.  Each of them was acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of California and/or City of Concord;

13. Defendants, DOES 21-25 are non-sworn employees of the City of Concord, are sued in their individual and official capacities; and at all times relevant were employees, agents or otherwise acting on behalf of the City of Concord and were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of California and/or City of Concord;

14. Defendant, Guy Swanger, is the Chief of Police for the City of Concord and is sued in his individual and official capacity. Chief Swanger acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

15. Defendant Matthew Switzer, identified herein as "K-9 Officer" was at all times employed by the City of Concord along with his K-9 "Figo".  At the time of the shooting in this case Switzer was engaged in illegal and unlawful conduct, and substance abuse for which he was at that time or soon thereafter under investigation by the Concord Police Department, yet despite knowledge of his illegal tendencies and substance abuse was permitted to perform his duties as the K-9 officer.  Switzer's K9 "Figo" was known to be uncontrollable and capable of excessive force and uncontrollable behaviors; Switzer is being sued in his individual and official capacities; Switzer's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Switzer acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

16. The Contra Costa District Attorney's Office is a department or division within the public entity of Contra Costa County and at all times relevant herein the employees and agents of the Contra Costa District Attorney's Office were acting on behalf of the County of Contra Costa, according to the policies and procedures of that office, under the color of law;

17. Defendant Mark Peterson is the District Attorney for the County of Contra Costa. Peterson is sued in his individual and official capacities. Mark Peterson is a Policy Maker within the Office of the District Attorney for the County of Contra Costa.  At all times relevant herein, Peterson was acting on behalf of the County of Contra Costa, according to the policies and procedures of that office, under the color of law;

18. Defendant Insp. John Conaty is an employee of the County of Contra Costa, District Attorney's Office. Conaty was one of the 4 individuals responsible for supervising the illegal cover-up operation of the intentional killing of Charles Burns. Conaty is sued in his individual and official capacities. Conaty acted on behalf of the County of Contra Costa, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and Contra Costa County;

19. Defendant, Barry Grove is an employee of the County of Contra Costa, District Attorney's Office. (Referred to herein as "The District Attorney Point Man") Grove was one of the 4 individuals responsible for supervising the illegal cover-up operation of the intentional killing of Charles Burns.  Grove is sued in his individual and official capacities. Grove acted on behalf of the County of Contra Costa, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and Contra Costa County; at all times herein mentioned, Grove was acting consistent with a "police officer" function of investigation as opposed to his prosecutorial function.

20. Investigators and other employees of the Contra Costa District Attorney's Office were at all times employed by the County of Contra Costa.  The representatives of the Contra Costa County District Attorney's Office are sued herein as Does 26-40; At all times mentioned herein, the representatives of the Contra Costa District Attorney's Office were acting in an investigative capacity and were implementing internal policies and procedures of the District Attorney's Office consistent with their training. The subject

policies and procedures purpose is facilitation of local police agencies control of investigations related to police misconduct within their agency, facilitating their efforts to conceal their officer's misconduct. All representatives of the District Attorney's Office were acting under color of law;

21. The City of Concord is a municipal corporation and the public employer of each of the defendants, City of Concord Police Officers and unsworn employees;

22. The County of Contra Costa is a public employer of each of the defendants, District Attorney's Office personnel;

23. This City of Antioch is a municipal corporation and the public employer of each of the defendants, Antioch Police Officers and unsworn employees;

24. Defendant James Stenger is an officer with the City of Antioch. Stenger was one of the 4 individuals responsible for supervising the illegal cover-up operation of the intentional killing of Charles Burns.  He is sued in his official and individual capacities. Stenger acted on behalf of the City of Antioch, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Antioch;

25. Allan Contado is the Chief of Police for the City of Antioch.  He is sued in his official capacity.  Chief Contado acted on behalf of the City of Antioch, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Antioch;

26. At all times relevant herein, all defendants were acting in concert and conspired with one another and were jointly and severally liable for the injuries to plaintiffs herein;

27. Does 41-60 at all times relevant herein are the employees, agents or representatives of the defendants named herein and the City of Antioch.  Does 41-60 at all times were acting in the course and scope of that employment or agency and were authorized to act on behalf of the other defendants; All such defendants were at all times acting under the color of law.

28. At all times relevant herein, all defendants were acting as agents of the other defendants, authorized to act thereby and were acting within the course and scope of said agency

29. Hereinafter "All Defendant" will refer to all defendants named in Paragraphs 9-27 of this complaint.

30. Hereinafter "Concord Officer Defendants" will refer to Concord Police Department Defendants Detective Chris Loercher, "Unnamed Officer" a.k.a. DOE 1, Officer Mike Hansen, Officer Steven White, Officer Brad Giacobazzi, Officer Danny Smith, Officer Eduardo Montero, Officer Steven Price, Officer Jason Passama, Officer Paul Miovas, Officer Matt Cain and Officer Matthew Switzer.

## IV. GENERAL ALLEGATIONS

31. At the time of drafting this amended complaint the Concord Police Department, and their representatives have acted in a "shroud of secrecy" in concert with the Antioch Police Department and the Contra Costa District Attorney's Office and their representatives with regard to the specific individuals involved and their specific roles in the seizure and killing alleged in this complaint.  The plaintiff has been provided with a partial Officer Involved Shooting report.  The plaintiffs have not been provided with the recordings, photos, video or audio associated with the investigation.  Nor have the plaintiffs been provided with each of the completed reports from the officers and individuals involved.

As such, the plaintiffs have identified certain persons as Doe Defendants and will amend

the complaint at such time as the information is made available to the plaintiffs or public.

Because defendants continue to withhold information related to the subject investigation

Plaintiffs will amend the complaint as required as additional information is disclosed.

Defendants conduct in fabricating reports and concealing information has effectively

hindered Plaintiffs access to the courts.

32. On May 10, 2013 defendant Police Officers committed a heinous act of intentionally and

maliciously killing Charles Burns;

33. On that date and time Officers from the Concord Police Department SIB and SET united,

acting with the permission of the City of Antioch, the Police Department, within the city

limits of Antioch, planned a surveillance and undercover operation with the intent of

arresting and harming Charles Burns. Charles Burns and Bobby Lawrence had exited

Charles place of residence headed to Wal-Mart to purchase a stereo harness and a

Mother's Day card.  They entered Lawrence's vehicle and then inexplicably an unmarked

vehicle driven by an undercover Concord Police Officer drove toward their vehicle to

block its movement, and in a threatening manner. Due to the fact that the officer was

undercover and was driving an undercover vehicle and drove towards Lawrence's vehicle

without identification or warning, Lawrence attempted to drive down the street to safety.

Lawrence had no information that the subject vehicle was driven by a police officer.  Nor

did the officer take any action to identify himself as a police officer.  As Lawrence drove

down the street towards his perceived direction of safety another undercover vehicle,

driven by an undercover officer rammed his vehicle; Lawrence then after being rammed

by a vehicle driven by another unknown assailant attempted to avoid the vehicle and tried

to continue down the path towards safety; when his vehicle was then rammed by another unmarked vehicle driven by another undercover officer; Lawrence then continued trying to escape this onslaught of unknown assailants. As Lawrence rounded Barcelona Circle, in Antioch, CA, the street on which he was traveling, one of the unmarked vehicles driven by an undercover officer continued to ram him from the rear. At no time did any of the undercover officers take any action to identify themselves or the vehicles they were driving as associated in any way with a police agency. It was not until Lawrence reached the stop sign at the end of the circle that, for the first time, there was identification that the assailants were the police. Immediately upon learning the assailants were the police, Lawrence stopped the vehicle, which was then rammed again by the undercover officer driving the vehicle behind Lawrence's. Lawrence held his hands up and outside the driver's side window in plain view of the officers. Burns, the passenger exited the vehicle out of the passenger side door and jogged slowly approximately 20 feet to the middle of the road where he then stopped at the direction of the police. Burns was not armed and carried no weapon or anything that could be construed as a weapon. Burns took no aggressive action but rather yielded to the officers and cowered his shoulders, with his "hands-up". Three officers from the Concord Police Department SIB unit lined up in firing squad fashion. The three officers were flanked by two additional SIB Officers (Loercher and Unnamed Officer). Multiple officers unloaded their weapons on the defenseless burns with full intent to execute him. Officers Loercher and Unnamed Officer admitted to shooting Burns. The Concord Police Department SIB unit members continued to shoot Burns despite the fact that he was laying lifeless or near lifeless on the ground including shooting a bullet through the top of his skull and through his brain.

Another Concord Police Officer (K-9 officer Switzer) then released a Concord Police K-9 (Figo) for the purpose of further maiming Burn's body as he lay in a pool of his own blood brought on by the onslaught. No effort was made to stop the dog from attacking Burns and as his limbs flailed from the dogs attack the officers stood by and watched. Ultimately the dog's handler came and pulled the dog away. Unnamed Officer "Doe 1" (Shooter 2) then walked forward and stood over Burns' lifeless body as he lay in the pool of his own blood, full of bullet holes, maimed by the police dog and fired an additional two rounds into Burns body out of pure malice and spite.  At no time did the officers consider or employ any means of addressing the situation with force short of lethal force, despite the fact that lethal force, nor any force was necessary nor warranted under the circumstances. The officers did in fact carry out what they had intended or desired, infliction of lethal force upon plaintiff Charles Burns killing him;

34. The officers in this case created a perceived situation of peril when the perceived danger did not actually exist. They engaged in a hapless execution of a search warrant and by their reckless conduct, exacerbated the situation by using lethal force when there was no legal basis, nor practical requirement for use of lethal force;

35. While the acts described in paragraph 33 above were occurring, Lawrence was pulled out of his vehicle, physically and verbally threatened, dragged across the street and shoved into a fence where he was held down, roughed up and ridiculed despite providing no resistance. Lawrence was arrested without cause or legal justification. Lawrence was then taken to the Antioch police station where Concord and Antioch officers, and representatives from the District Attorney's Office held him without legal justification and against his will and subjected him to aggressive and unwarranted harassment in an

effort to elicit false, misleading information from him. Lawrence was blamed for the death of his friend, was screamed at, yelled at, and intimidated by Concord Officer Parodi, and Antioch Officer Stenger, and District Attorney Investigator Conaty.  The purpose and intent of the conduct of the officers was to intimidate Lawrence, a young man under 20 years old, into providing a statement that would conceal the true unlawful and heinous conduct of the officers and cast blame on Lawrence and Burns. Lawrence was subjected to hours of unlawful and disturbing interrogation and ultimately released after having to post bail;

36. Parodi, Conaty and Stenger created an audio recording of the subject interview using a digital recording device. They then proceeded to start and stop the recorder several times during the course of the interview. By doing so they fabricated a statement that contains information out of context by piecing together different portions of the recording, in order to produce a statement that would attempt to justify the conduct of the offending officers. They then produced a falsified written investigative report in order to cover-up the illegal conduct of their fellow law "enforcement" personnel;

37. The officers at the Antioch Police Department along with the Concord Police Officers and the Contra Costa County District Attorneys office then undertook to fabricate information related to the shooting to protect the officers involved and to conceal their illegal conduct. The Officers did not follow proper and reasonable police practices in obtaining statements and preserving evidence related to the shooting. In fact the officers from both agencies and the representatives of the District Attorney's Office purposely did not video record all interviews in order to conceal the truth and to conceal their illegal tactics in eliciting information. While the officers from the Concord Police Department

were principally involved in the actual shooting of Mr. Burns and the initial detention of Mr. Lawrence, representatives from the Antioch Police Department and the Contra Costa District Attorneys office were involved with the illegal prolonged detention of Lawrence, and the Lawrence arrest, and actively participated in the cover-up. At all times officers from each agency and the district attorney's office engaged in the unlawful conduct described herein personally and at other times stood by and watched and did not intervene despite a duty to intervene and protect the constitutional rights violated as described herein;

38. While Lawrence was taken away and interrogated, several Concord Police Officers acted in concert with the Antioch Police Department, the Contra Costa County District Attorneys Office and the Contra Costa County Sheriff's Criminalist Division to secure the scene and Charles Burns' body in an effort to conceal their unlawful and malicious conduct;

39. No effort was ever made by any law enforcement representative to provide emergency aid to Burns or contact any third party emergency aid provider at a time when medical aid could have been provided before death. Rather than seek medical aid the officers sought to make sure Mr. Burn's was dead by deploying the police dog and then finishing him off with two additional shots at close range. Rather than save Mr. Burns once he was incapacitated, the officers intentionally caused him to suffer greatly prior to his death. The officers then stood around and laughed and joked while Burns body lie open to the public for several hours just feet away. Shortly after the killing, DDA Barry Grove, the representative of the District Attorney's office (the District Attorney Point Man) showed up on scene and one by one the SIB and SET officers entered and exited the vehicle

where the District Attorney's Point Man was seated and the groundwork was laid for fabricating the story for public consumption and concealing the truth regarding the killing of Charles Burns;

40. Defendants Conaty, Stenger and Parodi acting in concert with one another and with other defendants herein placed the involved officers in the comfort and solace of hotel rooms while they determined the information known to others and then sought out to fabricate the events of the evening by way of forceful and inappropriate interrogation of Plaintiff Lawrence, and manipulation of his statement by starting and stopping the portions of his recorded interrogation. All along they were coaching the officers to provide statements consistent with a theory exculpating the officers from their willful killing of Charles Burns. Conaty, Stenger and Parodi, along with Grove provided the officers information and coaching, and rehearsed their statements and then recorded the statements in a manner to optimize a fabricated version of events;

41. At no time since the death of Charles Burns at the hands of the Concord Police Department has any defendant sought to gain information inculpating the officers in wrongful conduct or searching for the truth. In fact, inexplicitly, the investigation was conducted as a homicide investigation with the "suspect" being the deceased Charles Burns. Bobby Lawrence was treated as a suspect in a PC 245 (a) assault with a deadly weapon investigation; and the involved officers were treated and characterized as "victims";

42. A "shroud of secrecy" has since ensued and has continued up until the time of the drafting of this amended complaint.  The Concord Police Officers and Antioch Police Officers took several months to carry out the coordinated effort to complete their reports,

and did so as a concerted action with representatives from the Contra Costa County District Attorney's Office.  The product of the defendants' concerted concealment efforts is a cover-up of the heinous acts of the Concord Police Officers on May 10, 2013 in the slaying of Charles Burns. This concerted effort was made possible based on a County Wide law enforcement policy called the "LEIFI Protocol" (hereinafter "Protocol");

43. The "Protocol" was conceived as a means for deploying multiple law enforcement agencies and resources to conduct a swift, efficient and transparent investigation involving police officer misconduct. However in reality the "Protocol" has provided the law enforcement community in Contra Costa County with a powerful tool for covering up police misconduct.  The supervisors in the law enforcement community, including Chief Swanger, Chief Contado and District Attorney Peterson have adopted and continue to employ the "Protocol" knowing that it would serve as a means for their subordinates to work together to conceal police misconduct and despite being aware that the "Protocol" has been abused in such a manner. Swanger, Contado and Peterson were likewise aware that the "Protocol" was in fact being used in the same illegal and abusive manner in this case and despite this knowledge allowed the abusive and illegal conduct to occur.  The "Protocol" is a façade. The protocol gives the appearance of propriety by having several agencies involved in an investigation on what is supposed to appear as a checks and balances between the various agencies.  However in reality the "Protocol" is utilized in Contra Costa County as a means for establishing a conspiratorial and concerted effort by law enforcement agencies to protect one another when officers unlawfully harm and kill citizens. This policy is consistent with a long standing practice by law enforcement agencies with the support of the District Attorney's Office of unconstitutional conduct

permeating their activities under the disposition that the "Ends Justifies the Means". This concerted effort in this instance was further facilitated by the fact that the District Attorney, Mark Peterson, received substantial donations and support from the Concord Police Department during his campaign for the District Attorney position. In fact, the Concord Police Department was the only Police Department in Contra Costa County that endorsed his campaign for District Attorney. As a result he directed his office to takes steps to facilitate the cover-up of the Concord Police Officer's misconduct in this case, and ignored requests by Plaintiffs to turn the investigation over to an independent law enforcement agency;

44. Plaintiffs requested the District Attorney's Office and the Concord Police Department turn this investigation over to a neutral third party based on the obvious conflicts for each of these agencies. Having knowledge that involving a neutral third party investigative agency would expose the misconduct by the officers, the Concord Police Department and District Attorney's Office continued their concerted effort to conceal the misconduct with the assistance of the Antioch Police Department pursuant to the "Protocol";

45. At all times herein the defendants acted with reckless and deliberate indifference to the constitutional rights of Plaintiffs;

46.  Plaintiffs timely served a California Tort Claims on the City of Concord, City of Antioch, and County of Contra Costa. The City of Concord and Contra Costa County denied the claims and the City of Antioch denied the claim by operation of law by not denying or granting the claim within 150 days of being served with the claim.  The California Tort Actions filed in this complaint are done so timely relative to the California Tort Claims Act;

# V.  DAMAGES

47. Plaintiffs have incurred and will continue to incur substantial attorney's fees and costs associated with prosecuting these lawful claims pursuant to 42 USC 1983, and 1988;

48. As a result of Defendants' violation of Plaintiffs' federal civil rights under 42 USC 1983, and the Fourteenth Amendment to the U.S. Constitution, Plaintiffs have been mentally and emotionally damaged, including but not limited to loss of familial relations, decedents society, comfort, protection, companionship, love, affection, solace and moral support; and for other compensatory damages, economic and non-economic as provided by law;

49. Plaintiff, Burns' are entitled to recover wrongful death damages pursuant to CCP section 377.60 and 377.61 and California Probate Code section 6402(b);

50. Plaintiff, Estate of Charles Burns, by and through Tammie Burns, Personal Representative of the Estate of Charles Burns, is entitled to recover damages pursuant to his right of survivorship for the pain and suffering he endured as a result of the violation of his civil rights.

51. Plaintiff, Bobbie Lawrence is entitled to recover damages for pain, mental suffering, humiliation, duress, out of pocket loss and other compensatory damages economic and non-economic damages according to proof;

52. Plaintiffs are entitled to punitive and exemplary damages for violation of civil rights and other claims, according to proof.

## VI.  FIRST CAUSE OF ACTION
### 42 U.S.C. 1983 AGAINST "Concord Officer Defendants"

**AS TO Plaintiff ESTATE OF CHARLES BURNS by TAMMY BURNS, Personal Representative of the Estate of Charles Burns**

53. Paragraphs 1 through 52 are incorporated herein by reference as though fully set forth herein;

54. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. 1983 against the above-mentioned defendants for violation of his constitutional rights under color of law.

    a.   The above-mentioned Defendants, the "Concord Officer Defendants, committed an unlawful seizure and used excessive force through lethal force in violation of the 4th amendment of the U.S. Constitution;

    b.   The Defendants denied Plaintiff the right to life and liberty without due process of law in violation of the 14th amendment of the U.S. Constitution;

    c.   The Defendants deprived Plaintiff of his right to familial association in violation of the 14th amendment of the U.S. Constitution;

    d.   The Defendants were deliberately indifferent to provision of emergency medical care to decedent again in violation of the 14th amendment to the U.S. Constitution.

55. As a direct result of Defendants' actions, Plaintiff suffered substantial mental suffering, humiliation, and loss of life.  Plaintiff's damages include economic and non-economic damages. The conduct of defendants was reckless, malicious and deliberately in violation of plaintiffs constitutional rights;

56. Wherefore plaintiffs pray as hereinafter specified;

## VII.   SECOND CAUSE OF ACTION

**Conspiracy To Violate Civil Rights—42 U.S.C. 1983 AGAINST "Concord Officer Defendants"**

**AS TO Plaintiff Estate of Charles Burns by Tammy Burns, Personal Representative of the Estate of Charles Burns**

57. Paragraphs 1 through 56 are incorporated herein by reference as though fully set forth herein;

58. Defendants, "Concord Officer Defendants," in this cause of action conspired to violate Plaintiff's civil rights as follows:

    a.  The above-mentioned Defendants conspired to committed an unlawful seizure and used excessive force through lethal force in violation of the 4th amendment of the U.S. Constitution;

    b.  The Defendants conspired to denied Plaintiff the right to life and liberty without due process of law in violation of the 14th amendment of the U.S. Constitution;

    c.  The Defendants conspired to deny Plaintiff of his rights to familial association in violation of the 14th amendment of the U.S. Constitution;

    d.  The Defendants conspired to deprive Plaintiff to provision of emergency medical care to decedent again in violation of the 14th amendment to the U.S. Constitution.

59. In addition the named Defendants were at all times in a position to prevent the violation of Plaintiff's civil rights from occurring but failed to take any action to do so, despite their duty to protect citizens;

60. As a result of acts in furtherance of the object of the conspiracy, Plaintiffs suffered deprivation of his rights and suffered physical and emotional damages as aforesaid;

61. As a direct result of the conspiratorial acts, Plaintiff suffered substantial mental suffering, humiliation and loss of life. Plaintiff's damages include economic and non-economic damages. The conduct of the defendants was reckless, malicious and deliberately in violation of Plaintiff's constitutional rights;

62. Wherefore Plaintiff prays as hereinafter specified;

### VIII.   THIRD CAUSE OF ACTION
### 42 U.S.C. 1983 AGAINST All Defendants

### AS TO Plaintiff Bobby Lawrence

63. Paragraphs 1 through 62 are incorporated herein by reference as though fully set forth herein;

64. Plaintiff Bobby Lawrence claims damages for the injuries set forth above under 42 U.S.C. 1983 against all Defendants for violation of his constitutional rights under color of law. Defendants violated Mr. Lawrence's 4th amendment and 14th amendment rights by means of illegal detention, prolonged unjustified detention, unlawful arrest, and false imprisonment;

65. Mr. Lawrence has suffered substantial mental suffering, mental anguish and humiliation. Plaintiff's damages include economic and non-economic damages. The conduct of defendants was reckless, malicious and deliberately in violation of Plaintiff's constitutional rights;

66. Whereas Plaintiffs pray as hereinafter specified;

## IX.  FOURTH CAUSE OF ACTION
### 42 U.S.C. 1983 AGAINST "Concord Officer Defendants"

### AS TO Plaintiffs John and Tammy Burns

67. Paragraphs 1 through 66 are incorporated herein by reference as though fully set forth herein;

68. Plaintiffs John and Tammy Burns claim damages for the injuries stated above under 42 U.S.C. 1983 against Defendants for violations of their constitutional rights under color of law. Defendants, "Concord Officer Defendants," have deprived Plaintiffs of their right to familial association with their son, decedent Charles Burns, in violation of the 14th amendment of the U.S. Constitution by conspiring to kill, assisting with the killing of, and the killing of Charles Burns in the manner stated in Paragraphs 1-66 above;

69. Plaintiffs have suffered substantial mental suffering, humiliation, and loss of life. Plaintiffs' damages include economic and non-economic damages. The conduct of defendants was reckless, malicious and deliberately in violation of plaintiffs constitutional rights;

70. Wherefore Plaintiffs pray as hereinafter specified;

## X.  FIFTH CAUSE OF ACTION
### Conspiracy To Violate Civil Rights—42 U.S.C. 1983 AGAINST All Defendants

### AS TO Plaintiffs Tammy Burns, John Burns, and Bobby Lawrence

71. Paragraphs 1 through 70 are incorporated herein by reference as though fully set forth herein;

72. Plaintiffs Tammy Burns and Johnnie Burns are "victims" of crime pursuant to Article 1 Section 28 of the California Constitution.  As "victims" of crime the plaintiffs are entitled to access to the criminal justice system and the rights, privileges and benefits associated

with the Victims Bill of Rights.  The plaintiffs have been denied access to the course of justice available to victims through the criminal justice system.  The plaintiffs have been denied this access by the conspiracy set forth herein the principal objective of which was to cover-up the illegal and willful killing of Burns at the hands of the Concord Police Officers;

73. Plaintiff, Bobby Lawrence was subjected to excessive force in effectuation of an illegal detention and arrest as set forth above. A principal part of the cover-up included the cover up of the illegal detention and arrest of Lawrence;

74. Defendants conspired to violate Plaintiffs' civil rights as set forth above and as follows:

   a. The law enforcement agencies in Contra Costa County, have established and maintained a "Protocol" for concealing and covering up misconduct by law enforcement officers in Contra Costa County; the maintenance of this protocol for the purpose of abusing individuals constitutional rights is facilitated by the policies and involvement of the Contra Costa District Attorney's Office;

   b. District Attorney Mark Peterson, Chief Swanger and Chief Contado have personally authorized and maintained the existence of the "Protocol" for covering up police misconduct in general and specifically in this case by their actions and omissions; and failure to step in and hold the wrong-doers accountable for the misconduct that occurred in this case;

   c. The "Protocol" was established in order to provide a mechanism for covering up police misconduct while appearing to be a mechanism for transparency.  The "Protocol" is a façade;

d.  On May 10, 2013 members of the SET and SIB along with Contra Costa County Deputy District Attorney Kevin Bell gathered and planned to execute an arrest warrant against Charles Burns.  Hansen, the supervisor of the particular operation overstated the risks and dangers associated with the execution of the warrant in order to justify use of excessive resources and excessive force.  In total 13 officers from the Concord Police Department including members of the SIB and SET and Switzer the K-9 officer were deployed to take Burns into custody and conduct a search of his person and property.  What should have been nothing more than a routine traffic stop and detention was turned into a dramatic and perilous undertaking;

e.  The SIB officers were directly involved in the killing of Burns and the SET officers were on scene and witnessed the conduct;

f.  DDA Kevin Bell was involved with the entire operation and was a passenger in Hansen's vehicle at the time of the shooting.  The shooting occurred directly in front of Bell who provided a false statement regarding the shooting.  Bell assisted the officers engaged in the cover-up by agreeing to and providing a statement which failed to contradict the officers rendition of events, in particular the location of Burns' hands and the manner of the shooting and deployment of the K-9; Bell had an opportunity and duty to provide accurate and truthful information related to the shooting in that he personally witnessed a defenseless and non-threatening man be executed by the SIB officers and yet sought to assist the officers in covering up their misconduct;

g.  Shortly after the shooting Grove arrived as a point man for the Contra Costa District Attorney's Office. Each of the SIB and SET officers entered Grove's vehicle one after another and with the assistance of Grove the falsified story was created;

h.  The SIB and SET officers knowing they had witnessed the unjustified shooting of an unarmed, defenseless and non-threatening young man agreed to provide false information related to the detention and arrest in that:

    i.  The initial detaining officer disclosed he was a police officer, which was not true;

    ii.  Lawrence rammed the officer's car, which was not true;

    iii.  Lawrence rammed a second officer's car which was not true;

    iv.  Lawrence fled despite it being apparent police were involved, which was not true;

    v.  Lawrence was detained without incident or force, which was not true;

The SIB and SET officers despite witnessing the unjustified shooting of a defenseless, non-threatening Burns agreed to provide information related to the shooting that:

    vi.  Burns was fleeing at the time he was shot, which was not true;

    vii.  Burns had his hands in his waistline, which was not true;

    viii.  Burns appeared to be reaching into his waistline to pull something out, which was not true;

    ix.  Burns held an object appearing to be a weapon, which was not true;

x. Burns turned toward the officers in a manner consistent with what could be perceived to be a threatening manner, which was not true;

xi. Downplayed the malicious nature of the shooting;

xii. Concealed the fact the officers continued to shoot Burns after he was completely incapacitated;

xiii. Failed to describe any basis for utilization of force short of lethal force;

xiv. Described Burns as moving on the ground justifying the deployment of the dog and additional shots fired, which was not true;

i. The Concord Police Department had no legitimate information that Charles Burns presented any real threat to Concord Police Officers or any other police officers;

j. As part of the cover-up the nature of the threat was falsified and exaggerated after the killing of Burns in order to justify the unlawful killing;

75. DDA Grove took charge of the investigation and with the agreement and cooperation of the SIB, SET, Conaty, Parodi, Stenger and others began to orchestrate a concerted effort to produce a falsified Officer Involved Shooting investigation the ultimate goal of which was to conceal and cover-up the illegal killing of Burns at the hands of their fellow law enforcement officers;

76. Once a false story attempting to describe a justifiable homicide was agreed upon, the 4 primary actors met and formulated a game plan for utilization of the law enforcement resources to obtain statements supporting the false storyline;

77. In doing so, the 4 primary actors Grove, Conaty, Parodi and Stenger conducted meetings with all the investigating officers and directed them to obtain information supportive of

the false version of events. Burns and Lawrence were considered and treated as suspects and SIB/SET personnel were considered and treated like victims;

78. A decision was made to intentionally record interviews on digital audio equipment and not video so that the recorder could be started and stopped and the digital files manipulated to form a false statement. Video equipment was intentionally forgone despite its availability in that the digital video files were not as readily susceptible to manipulation;

79. The SIB and SET officers were coached by Grove, Conaty, Parodi and Stenger before providing recorded statements in order to ensure they each would provide a statement that was either consistent with the false version of events or did not significantly contradict the cover-up. The information contained in the OIS report omits significant information and contains false statements by the SIB and SET officers in order to portray the illegal killing of Burns as a justifiable homicide. Not only were the officers coached before giving their statements but they were also coached during obtaining their statements so that Grove, Conaty, Parodi and Stenger could be certain the statement obtained was consistent with the cover-up.  Each of the officers were aware that the manner of obtaining the statements was in violation of good practices and police procedures but agreed to partake in the method in order to further facilitate the cover-up;

80. In furtherance of the cover-up one or more officers planted non-prescribed pills on Burns body so that they would be found during the autopsy. This was done in an effort to corroborate the fabricated information that Burns was reaching for his waistline;

81. The officers conducted an illegal entry and search of the house from where Burns exited prior to getting in the vehicle that was rammed by the police officers;

82. One or more of the officers involved in the cover-up took property that has not been accounted for in any reports and furthered the cover-up by providing reporting false or exaggerated events related to seizures that occurred from the house;

83. In addition the defendant Officers were at all times in a position to prevent the violation of Plaintiffs' civil rights from occurring but failed to take any action to do so, despite the duty of their office to protect citizens;

84. As a result of acts in furtherance of the object of the conspiracy, Plaintiffs suffered deprivation of his their rights and suffered physical and emotional damages as aforesaid;

85. Plaintiffs have suffered substantial mental suffering, humiliation and loss of life. Plaintiffs' damages include economic and non-economic damages. The conduct of defendants was reckless, malicious and deliberately in violation of plaintiffs constitutional rights;

86. Wherefore Plaintiffs pray as hereinafter specified;

## XI.  SIXTH CAUSE OF ACTION
### 42 U.S.C. 1983 AGAINST Defendants City of Concord, Chief Swanger (MONELL)

### AS TO All Plaintiffs

87. Paragraphs 1 through 86 are incorporated herein by reference as though fully set forth herein;

88. Prior to and including May 10, 2013 and thereafter, the City of Concord developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in contact with Concord Police Officers, which caused violation of Plaintiffs' rights;

89. Moreover, Plaintiffs notified Chief Swanger that his department was engaging in an illegal investigation and was covering up the unlawful killing of Burns.  Plaintiffs further requested Swanger defer the investigation of Burns' death to an independent third party. Despite this notice, Swanger had his officers continue to participate in the investigation knowing that a cover-up was under way;

90. It was the policy and/or custom of the City of Concord to inadequately supervise and train its police officers, including the defendant Officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City of Concord did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct involving excessive force and false arrest;

91. The City of Concord did not require appropriate in-service training of officers on issues of use of force, use of lethal force, arrest procedures, execution of warrants, and other related duties;

92. The City of Concord had prior knowledge of the propensity of the Individual Officers in this case to engage in unlawful acts in violation of persons constitutional rights and yet continued to employ them in such capacity that they were able to engage in the alleged conduct unfettered by lawful limitations that should have be placed upon them;

93. In the City of Concord officers engaged in undercover work as part of the Special Investigations Bureau are given free reign to engage in unconstitutional conduct which is tolerated and authorized within the department;

94. Amongst others, Chief Swanger authorized, directed, and ratified the actions of the Individual defendant Officers; Chief Swanger is a policy maker for the City of Concord;

95. As a result of the above described policies and customs, police officers of the City of Concord, including defendant Officers, believed that their actions would not be properly monitored by supervisory officers and their misconduct would not be investigated or sanctioned, but would rather be tolerated;

96. The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the City of Concord, including but no limited to Chief Swanger, to the constitutional rights of persons contacted by the Concord Police Department, and were the cause of the violations of Plaintiffs' rights alleged herein;

97. As a result of acts in furtherance of the object of the conspiracy, Plaintiffs suffered deprivation of their rights and suffered physical and emotional damages as aforesaid;

98. Plaintiffs have suffered substantial mental suffering, humiliation and loss of life and loss of companionship. Plaintiffs' damages include economic and non-economic damages. The conduct of defendants was reckless, malicious and deliberately in violation of plaintiffs constitutional rights;

99. Wherefore Plaintiffs pray as hereinafter specified;

**XII.    SEVENTH CAUSE OF ACTION**
**42 U.S.C. 1983 AGAINST Defendants County of Contra Costa,**
**District Attorney Mark Peterson**
**(MONELL)**

**AS TO All Plaintiffs**

100. Paragraphs 1 through 99 are incorporated herein by reference as though fully set forth herein;

101. Prior to and including May 10, 2013 and thereafter, the County of Contra Costa District Attorneys Office developed and maintained policies, practices, and customs exhibiting

deliberate indifference to the constitutional rights of persons subjected to excessive force

and other misconduct, which caused violations of Plaintiffs' rights;

102. It was the policy and/or custom of the Contra Costa District Attorney's to inadequately

supervise and train its investigators regarding proper and lawful police misconduct

investigations, and to instruct them to assist local law enforcement in concealing

misconduct, thereby failing to adequately discourage further constitutional violations on

the part of its investigators. The Contra Costa District Attorney's Office did not require

appropriate in-service training or re-training of investigators on the subject matter of

lawful and proper police misconduct investigations;

103. The Contra Costa District Attorney's Office did not require appropriate in-service

training of investigators on issues of use of force, use of lethal force, arrest procedures,

execution of warrants, and other related duties for which they would ordinarily be called

upon to conduct investigations;

104. The Contra Costa District Attorney's Office had prior knowledge of the propensity of the

Concord Police Department and Concord Police Officers to engage in unlawful acts in

violation of persons constitutional rights, particularly with regard to excessive force, and

yet took no disciplinary action, nor gave any instruction to the agency to take disciplinary

action, nor any other action to prevent further constitutional violations, rather allowing

them to engage in the alleged conduct unfettered by lawful limitations that should have

be placed upon them;

105. In Contra Costa County there is a long history of tolerating the infringements of the

citizens constitutional rights by law enforcement agencies, supported by the District

Attorney's office and in particular with regard to special investigations units such as

historically East NET, CNet, and other undercover narcotics investigation units similar to

the SIB unit in this case.  The infringements have, did, and continue to violate citizens

constitutional rights by law enforcement agencies within Contra Costa County.

106. Mark Peterson authorized, directed and ratified the actions of the District Attorney's

Office Investigators. Mark Peterson is a policy maker for the County of Contra Costa;

107. As a result of the above described policies and customs, Investigators for the Contra

Costa District Attorney's Office believed that their actions would not be properly

monitored by supervisory personnel and their misconduct would not be investigated or

sanctioned, but would rather be tolerated;

108. Plaintiffs notified Peterson that there was a cover-up of the illegal killing of Burns

underway and that he should defer the investigation to an independent third party.

Peterson despite his personal conflict based on political support he had received from the

Concord Police Department and despite knowledge that a cover-up was underway chose

to allow the cover-up to continue with members of his department, namely Grove and

Conaty being principally involved in the cover-up;

109. The above described policies and customs demonstrated a deliberate indifference on the

part of the policymakers of the County of Contra Costa, including but no limited to Mark

Peterson, to the constitutional rights of persons contacted by the Concord Police

Department, and were the cause of the violations of Plaintiffs' rights alleged herein;

110. As a result of acts in furtherance of the object of the conspiracy, Plaintiffs suffered

deprivation of his their rights and suffered physical and emotional damages as aforesaid;

111. Plaintiffs have suffered substantial mental suffering, mental anguish, humiliation, loss of

life, and loss of companionship. Plaintiffs' damages include economic and non-economic

damages.  The conduct of defendants was reckless, malicious and deliberately in

violation of plaintiffs constitutional rights;

### XIII.   EIGHTH CAUSE OF ACTION
### 42 USC 1983 AGAINST City of Antioch, Chief Contado
### (MONELL)

### AS TO All Plaintiffs

112. Paragraphs 1 through 111 are incorporated herein by reference as though fully set forth

herein;

113. Prior to and including May 10, 2013 and thereafter, the City of Antioch Police

Department developed and maintained policies, practices, and customs exhibiting

deliberate indifference to the constitutional rights of persons subjected to excessive force

and other misconduct, which caused violations of Plaintiffs' rights;

114. It was the policy and/or custom of the Antioch Police Department to inadequately

supervise and train its officers regarding proper and lawful police misconduct

investigations, and to instruct them to assist local law enforcement in concealing

misconduct, thereby failing to adequately discourage further constitutional violations on

the part of its investigators. The Antioch Police Department did not require appropriate

in-service training or re-training of officers on the subject matter of lawful and proper

police misconduct investigations;

115. The Antioch Police Department did not require appropriate in-service training of officers

on issues of use of force, use of lethal force, arrest procedures, execution of warrants, and

other related duties for which they would ordinarily be called upon to conduct

investigations;

116. The Antioch Police Department had prior knowledge of the propensity of the Concord Police Department and Concord Police Officers, Antioch Police Department and Antioch Police Officers to engage in unlawful acts in violation of persons constitutional rights, particularly with regard to excessive force, and yet took no disciplinary action, nor gave any instruction to the agency to take disciplinary action, nor any other action to prevent further constitutional violations, rather allowing them to engage in the alleged conduct unfettered by lawful limitations that should have be placed upon them;

117. Chief Contado authorized, directed and ratified the actions of the Antioch Police Officers and the Concord Police Officers acting within his jurisdiction. Chief Contado is a policy maker for the City of Antioch;

118. As a result of the above described policies and customs, Officers from the City of Antioch believed that their actions would not be properly monitored by supervisory personnel and their misconduct would not be investigated or sanctioned, but would rather be tolerated;

119. The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the City of Antioch, including but no limited to Chief Contado, to the constitutional rights of persons contacted by the Concord Police Department and Antioch Police Department and were the cause of the violations of Plaintiffs' rights alleged herein;

120. As a result of acts in furtherance of the object of the conspiracy, Plaintiffs suffered deprivation of his their rights and suffered physical and emotional damages as aforesaid.

121. Plaintiffs have suffered substantial mental suffering, mental anguish, humiliation, loss of life, and loss of companionship. Plaintiffs' damages include economic and non-economic

damages.  The conduct of defendants was reckless, malicious and deliberately in

violation of plaintiffs constitutional rights;

## XIV.   NINTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AGAINST All Defendants

**AS TO Plaintiffs John Burns, Tammy Burns, and Estate of Charles Burns by Tammy
Burns, Personal Representative of the Estate of Charles Burns**

122. The Plaintiffs hereby incorporate paragraphs 1 through 121 as if set forth fully herein;

123. The conduct of defendants as described above was intentional conduct. The defendants

were aware they had a duty towards plaintiffs and intentionally violated that duty;

124. The conduct was extreme and outrageous behavior beyond all common decency; The

conduct of defendants resulted in extreme and substantial emotional distress to plaintiffs;

125. Plaintiffs John Burns, Tammy Burns and decedent Charles Burns suffered substantial

mental suffering, humiliation, and loss of life. Plaintiffs' damages include economic and

non-economic damages. The conduct of defendants was intentional, reckless, malicious

and deliberate and justifies an award of punitive and exemplary damages;

## XV. TENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AGAINST All Defendants

**AS TO Plaintiffs John Burns, Tammy Burns, and Estate of Charles Burns by Tammy
Burns, Personal Representative of the Estate of Charles Burns**

126. Plaintiffs hereby incorporate paragraphs 1 through 125 as if set forth fully herein;

127. Defendants had a duty to reasonable care toward Plaintiffs John Burns, Tammy Burns,

and decedent Charles Burns;

128. Defendants failed to exercise due care as set forth above;

129. As a result of defendants conduct, Plaintiffs suffered substantial emotional and mental suffering;

130. Plaintiffs have suffered substantial mental suffering, humiliation and loss of life. Plaintiffs' damages include economic and non-economic damages.  The conduct of defendants was reckless, malicious and justifies an award of punitive and exemplary damages;

## XVI.   ELEVENTH CAUSE OF ACTION
## BATTERY AGAINST "Concord Officer Defendants"

### AS TO Plaintiff Estate of Charles Burns Tammy Burns, Personal Representative of the Estate of Charles Burns

131. The Plaintiffs hereby incorporate paragraphs 1-130 as if set forth fully herein;

132. The Defendants, "Concord Officer Defendants" intentionally engaged in a harmful and offensive touching of Plaintiff, decedent Charles Burns;

133. The touching which occurred was non-consensual;

134. The touching resulted in substantial physical and emotional injuries to the decedent;

135. Plaintiff suffered substantial mental suffering, humiliation, and loss of life.  Plaintiff's damages include economic and non-economic damages.  The conduct of defendants was reckless, malicious and deliberate and justifies an award of punitive and exemplary damages;

## XVII.  TWELVTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA CONSTITUITON RIGHTS

### AGAINST All Defendants

### AS TO Plaintiffs John Burns, Tammy Burns, and Bobby Lawrence

136. Plaintiffs hereby incorporate paragraphs 1-135 above as if set forth fully herein.

137. Victims of Crime in the State of California have certain Constitutional Rights as provided by Article 1 section 28 of the California Constitution.

138. Those rights include the right to have a lawful investigation into crimes in which they are victims, including victim Plaintiff Bobby Lawrence. Victims of crime include families of persons unlawfully killed by law enforcement, in this case Plaintiffs John and Tammy Burns.

139. The conduct of the defendants in this case as described above has deprived Bobby Lawrence, and John and Tammy Burns, in this case, to the rights and benefits afforded victims of crime in the State of California.

140. Plaintiffs have suffered emotional, economic and non-economic damages as a result of the conduct of defendants;

141. The conduct of defendants was intentional, malicious and in reckless disregard of plaintiffs constitutional rights under California Law.  As such, punitive and exemplary damages are appropriate in this matter.

## XVIII. PRAYER FOR RELIEF

**WHEREFORE, the Plaintiff requests they be awarded damages as follows:**

1. As to the Estate of Charles Burns the plaintiff seeks compensatory damages for the period of time he yielded to police commands to the point of his death at hands of the police; and for the costs associated with his burial and related expenses, as well as punitive and exemplary damages according to proof;

2. As to the remaining Plaintiffs, John and Tammy Burns and Bobby Lawrence, compensatory damages for economic and non- economic harm to plaintiffs against the

Individual Defendants, the City of Concord, City of Antioch and the County of Contra Costa jointly and severally;

3. Punitive and exemplary damages against individual defendants according to proof;

4. Costs incurred in the prosecution of this complaint;

5. Reasonable attorney's fees on all relevant causes of action;

6. Such other and further relief as this Court may deem appropriate.

Dated: August 12, 2014                    _____/S/_____
                                          Peter Johnson
                                          Attorney for Plaintiffs


PLAINTIFF HEREBY DEMANDS A JURY TRIAL


Dated: August 12, 2014

                                          _____/S/_____
                                          Peter Johnson
                                          Attorney for Plaintiffs