1
2
3
4
5
6
7

**United States District Court**
**For the Northern District of California**

8          UNITED STATES  DISTRICT COURT

9            Northern District of California

10              San Francisco Division

11  JOHN BURNS, et al.,                              No. C 14-00535 LB

12                      Plaintiffs,          **ORDER GRANTING DEFENDANTS'**
                                             **MOTIONS TO DISMISS**
13          v.                               **PLAINTIFFS' SECOND AMENDED**
                                             **COMPLAINT**
    CITY OF CONCORD, et al.,
14
                        Defendants.          [Re: ECF Nos. 49, 50, 51]
15  _____/

16                      **INTRODUCTION**

17      In this action, Plaintiffs John Burns, Tammy Burns, the Estate of Charles Burns, and Bobby

18  Lawrence have sued 21 Defendants, who can be broken up into three groups: (1) the City of

19  Concord, City of Concord Police Chief Guy Swanger, City of Concord Police Detectives Chris

20  Loercher and Tom Parodi[1], and City of Concord Police Officers Mike Hansen, Steven White, Brad

21  Giacobazzi, Danny Smith, Eduardo Montero, Steven Price, Jason Passama, Paul Miovas, Matt Cain,

22  and Matthew Switzer (collectively, the "Concord Defendants"); (2) the City of Antioch, City of

23  Antioch Police Chief Allan Cantando[2], and City of Antioch Police Officer James Stenger

24  (collectively, the "Antioch Defendants"); and (3) Contra Costa County, Contra Costa County

25  _____

26      [1] The court notes that Plaintiffs named City of Concord Detective James Nakayama as a
    defendant in their First Amended Complaint, but they have omitted him as a defendant in the Second
27  Amended Complaint.

28      [2] Erroneously sued as Allan Cantado.

C 14-00535 LB
ORDER

District Attorney Mark Peterson, Contra Costa County District Attorney's Office employee Barry Grove, and Contra Costa County Inspector John Conaty (collectively, the "Contra Costa Defendants"). *See generally* Second Amended Complaint ("SAC"), ECF No. 48.[3]  Plaintiffs also have sued Does 1-60, which includes an unnamed City of Concord Police Officer referred to as Doe 1.  Plaintiffs bring claims under 42 U.S.C. § 1983 for violation of Plaintiffs' Fourth and Fourteenth Amendment rights and claims arising under state law. *See id.* ¶¶ 51-109.  All three groups of Defendants have moved to dismiss Plaintiffs' Second Amended Complaint. *See* Antioch Motion, ECF No. 49; Concord Motion, ECF No. 50; Contra Costa Motion, ECF No. 51.  Pursuant to Civil Local Rule 7-1(b), the court found this matter suitable for determination without oral argument and vacated the October 16, 2014 hearing.  10/10/2014 Clerk's Notice, ECF No. 66.  Upon consideration of the record in this case, the parties' moving papers, and the applicable legal authority, the court **GRANTS** Defendants' motions to dismiss with leave to amend.

**STATEMENT**

**I. PLAINTIFFS' ALLEGATIONS**

According to Plaintiffs' Second Amended Complaint, on May 10, 2014, Charles Burns, who was John Burns's and Tammy Burns's son, was shot and killed in Antioch, California by officers of the Concord police department.  SAC ¶¶ 3, 9, 33-34; *but see id.* ¶ 32 (alleging that the "defendant Police Officers," rather than the officers from the Concord Police Department only, shot Charles Burns). Essentially, their story is as follows.

On May 10, 2014, thirteen Concord police officers, acting with the permission of the City of Antioch and with the knowledge of Contra Costa County Deputy District Attorney Kevin Bell (who is not a Defendant to this action), planned "a surveillance and undercover operation with the intent of arresting and harming Charles Burns." *Id.* ¶¶ 33, 74(d).  Essentially, Plaintiffs allege that Charles Burns and Mr. Lawrence went to Wal-Mart to buy a "stereo harness" and a Mother's Day card. *Id.* ¶ 33.  They were in Mr. Lawrence's car, and Mr. Lawrence was driving. *Id.*  "Inexplicably," an

---

[3] Citations are to the Electronic Case File ("ECF") with pin cites to the ECF-generated page numbers at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  undercover Concord police officer drove an unmarked vehicle in a threatening manner toward Mr.

2  Lawrence's vehicle to block its movement.  *Id.*  Mr. Lawrence and Charles Burns did not know that

3  the vehicle was being driven by a police officer, and the officer made no attempt to identify himself

4  as such.  *Id.*  Not knowing the situation and perceiving danger, Mr. Lawrence drove down the street

5  to safety.  *Id.*  As he did, the another undercover vehicle driven by an undercover officer rammed the

6  car.  *Id.*  Mr. Lawrence tried to avoid the vehicle and continue down the path towards safety when

7  his vehicle was then rammed by another unmarked vehicle driven by another undercover officer.  *Id.*

8  As he rounded Barcelona Circle in Antioch, one of the unmarked officer in an unmarked car

9  continued to ram him from the rear.  *Id.*  At no time did any of the officers take any action to identify

10  themselves or the vehicles they were diving as associated in any way with a police agency.  *Id.*  It

11  was not until Mr. Lawrence reached the stop sign at the end of the circle that, for the first time,

12  "there was identification that the assailants were police officers."  When that happened, Mr.

13  Lawrence stopped the vehicle, which was then rammed again by the undercover officer driving

14  behind Mr. Lawrence.  *Id.*  Mr. Lawrence held his hands up and outside the driver's side window in

15  plain view of the officers, thus surrendering to them.  *Id.*

16      Charles Burns, the passenger, got out of the car and jogged slow approximately 20 feet to the

17  middle of the road, where he then stopped at the direction of the police officers.  *Id.*  He was not

18  armed, carried no weapon or anything that could be construed as a weapon, took no aggressive

19  action, and instead yielded to the officers, cowered his shoulders, and put his hands up.  *Id.*  Three

20  Concord police officers lined up in firing squad fashion.   They were flanked by two additional

21  Concord Police officers, Chris Loercher and unnamed officer.  *Id.*  "Multiple officers unloaded their

22  weapons on the defenseless [Mr.] Burns with full intent to shoot him."  *Id.*   Officers Loercher and

23  the unnamed officer admitted to shooting Mr.  Burns.  *Id.*  The Concord police officers continued to

24  shoot him even though he was "laying lifeless or near lifeless on the ground," including shooting a

25  bullent through the top of his skull and through his brain.  *Id.*  Concord police officer Matthew

26  Switzer then released a K-9 dog to further maim Charles Burns's body.  *Id.*  Finally, another

27  Concord police officer walked over to Charles Burns's body, stood over it, and fired an additional

28  two rounds into it "out of pure malice and spite."  *Id.*

UNITED STATES DISTRICT COURT
For the Northern District of California

1   While all of this was happening to Charles Burns, Concord police officers pulled Mr. Lawrence

2   out of his car, physically and verbally threatened him, dragged him across the street, and shoved him

3   into a fence where he was held down, "roughed up," and ridiculed despite not resisting them. *Id.* ¶

4   35.  Then he was arrested without legal cause and taken to the Antioch police station "where

5   Concord and Antioch officers, and representatives from the Contra Costa County District Attorney's

6   Office held him without legal justification and against his will, and subjected him to aggressive and

7   unwarranted harassment in an effort to elicit false and misleading information from him. *Id.*

8   Concord Police Detective Parodi, Antioch Police Officer Stenger, and Contra Costa County

9   Inspector Conaty screamed at and intimidated Mr. Lawrence, who was under age 20, in an attempt

10  to get him to provide a statement that "would conceal the true unlawful and heinous conduct of the

11  officers and cast blame on [Mr.] Lawrence and [Charles] Burns." *Id.*  Mr. Lawrence "was subjected

12  to hours of unlawful and disturbing interrogation and ultimately released after having to post bail."

13  *Id.*  During this interrogation, Concord Police Detective Parodi, Antioch Police Officer Stenger, and

14  Contra Costa County Inspector Conaty recorded the interview with a digital recording device, but

15  they stopped and started the recording several times during the course of the interview.  "By doing

16  so, they fabricated a statement that contains information out of ocntext by poiecing together different

17  portions of the recording, in order to produce a statement that would attempt to justify the conduc tof

18  the offending officers." *Id.*  "They then produced a falsified written investigative report in order to

19  cover-up the illegal conduct of their fellow law 'enforcement' personnel." *Id.*

20      "The officers at the Antioch Police Department along with the Concord Police Offices and the

21  Contra Costa District Attorney's office then undertook to fabricate information related to the

22  shooting to protect the officers involved and to conceal their illegal conduct. *Id.* ¶ 37.  The

23  allegations that follow in the complaint specify the following about the alleged conspiracy to (1)

24  protect the Concord police officers who were involved in the shooting of Mr. Burns, (2) delay the

25  subsequent investigation of the shooting, and (3) conceal the facts surrounding the events under a

26  "shroud of secrecy."  *See id.* ¶¶ 37-44.  Specifically:

27      •   The Concord police officers, along with the Contra Costa County District Attorney's Office

28          and officers of the Antioch Police Department, "did not follow proper and reasonable police

**UNITED STATES DISTRICT COURT**
For the Northern District of California

practices in obtaining statements and preserving evidence related to the shooting" of Charles Burns and "purposely did not video record all interviews in order to conceal the truth and to conceal their illegal tactics in eliciting information." *Id.* ¶ 37; *see also id.* ¶ 78.

• Representatives from the Antioch Police Department and the Contra Costa District Attorney's Office were involved with the illegal prolonged detention of Lawrence and the Lawrence arrest, and they actively participated in the cover-up. At all times, offices from each agency and the district attorney's office engaged in the unlawful conduct personally and at other times tood by and watched and did not intervene despite a duty to do so. *Id.* ¶ 37.

• "[S]everal Concord Police Officers acted in concert with the Antioch Police Department, the Contra Costa County District Attorney's Office and the Contra Costa County Sheriff's Criminalist District to secure the scene and Charles Burns'[s] body in an effort to conceal their unlawful and malicious conduct." *Id.* ¶ 38.

• Defendants made no effort to provide emergency aid to Charles Burns or to contact any third party emergency aid provider prior to his death. *Id.* ¶ 39.

• "[I]n an effort to corroborate the fabricated information that [Charles] Burns was reaching for his waistline," "one or more officers planted non-prescribed pills on [Charles] Burns['s] body so that they would be found during the autopsy." *Id.* ¶ 80.

• "Shortly after the killing, [Contra Costa County District Attorney's Office employee Barry Grove], the representative of the District Attorney's [O]ffice (the District Attorney Point Man)[,] showed up on scene[,] and one by one the [Concord police officers] entered and exited the vehicle where [Mr. Grove] was seated[,] and the groundwork was laid for fabricating the story for public consumption and concealing the truth regarding the killing of Charles Burns." *Id.* ¶ 39.

• Concord Police Detective Parodi, Antioch Police Officer Stenger, and Contra Costa County Inspector Conaty, along with "other defendants," "placed the involved officers in the comfort and solace of hotel rooms while they determined the information known to others and then sought . . . to fabricate the events of the evening" through their interrogation of Mr. Lawrence. *Id.* ¶ 40.

- Concord Police Detective Parodi, Antioch Police Officer Stenger, Contra Costa County Inspector Conaty, and Contra Costa County District Attorney's Office employee Grove "coach[ed] the officers to provide statements consistent with a theory exculpating the officers from their willful killing of Charles Burns," "rehearsed their statements[,] and then recorded the statements in a manner to optimize a fabricated version of events." *Id.*; *see also id.* ¶¶ 75-77, 79.

- Contra Costa County Deputy District Attorney Kevin Bell, who was a passenger in Concord Police Office Hansen's vehicle at the time Charles Burns was killed, "assisted the officers engaged in the cover-up by agreeing to and providing" a false statement about the shooting and "which failed to contradict the officers['] rendition of events, in particular the locations [Charles] Burns['s] hands and the manner of the shooting and deployment of the K-9." *Id.* ¶ 74(f).

- The Concord Police Department has at no time since Charles Burns's death "sought to gain information inculpating the officers in wrongful conduct or search[ed] for the truth." *Id.* ¶ 41.

- A "shroud of secrecy" has surrounded the case and investigation. Concord and Antioch police officers "took several months to carry out the coordinated effort to complete their reports, and [they] did so as a concerted action with representatives from the Contra Costa County District Attorney's Office." *Id.* ¶ 42.

- "Having knowledge that involving a neutral third party investigative agency would expose the misconduct of the officers," the Concord Police Department and the Contra Costa District Attorney's Office continued "their concerted effort to conceal the misconduct" by refusing to "turn this investigation over to a neutral third party." *Id.* ¶ 44.

Plaintiffs allege that Defendants' concerted effort was made possible by "a County Wide law enforcement policy called the 'LEIFI Protocol.'" *Id.* ¶ 43. Plaintiffs allege that

> The "Protocol" was conceived as a means for deploying multiple law enforcement agencies and resources to conduct a swift, efficient[,] and transparent investigation involving police officer misconduct. However[,] in reality the "Protocol" has provided the law enforcement community in Contra Costa County with a powerful tool for covering up police misconduct. The supervisors in the law enforcement

UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13

community, including Chief Swanger, Chief Conta[n]do[,] and District Attorney Peterson have adopted and continue to employ the "Protocol" knowing that it would serve as a means for their subordinates to work together to conceal police misconduct and despite being aware that the "Protocol" has been abused in such a manner. Swanger, Conta[n]do[,] and Peterson were likewise aware that the "Protocol" was in fact being used in the same illegal and abusive manner in this case and despite this knowledge allowed the abusive and illegal conduct to occur.  The "Protocol" is a façade.  The ["P]rotocol["] gives the appearance of propriety by having several agencies involved in an investigation on what is supposed to appear as a checks and balances between the various agencies.  However[,] in reality the "Protocol" is utilized in Contra Costa County as a means for establishing conspiratorial and concerted effort by law enforcement agencies to protect one another when officers unlawfully harm and kill citizens.  This policy is consistent with a long standing practice by law enforcement agencies with the support of the [Contra Costa County] District Attorney's Office of unconstitutional conduct permeating their activities under the disposition that the "Ends Justifies the Means."  This concerted effort in this instance was further facilitated by the fact that the [Contra Costa County] District Attorney, Mark Peterson, received substantial donations and support from the Concord Police Department during his campaign for the District Attorney position.  In fact[,] the Concord Police Department was the only Police Department in Contra Costa County that endorsed his campaign for District Attorney.  As a result[,] he directed his office to take[] steps to facilitate the cover-up of the Concord Police Officer[s'] misconduct in this case, and ignored requests by Plaintiffs to turn the investigation over to an independent law enforcement agency.

14
15
16
17
18

*Id.* ¶ 43.  Plaintiffs further allege that "[Contra Costa County] District Attorney Mark Peterson, Chief Swanger[,] and Chief Conta[n]do have personally authorized and maintained the existence of the 'Protocol' for covering up police misconduct in general and specifically in this case by their actions and omissions" and by their "failure to step in and hold the wrong-doers accountable for the misconduct that occurred in this case." *Id.* ¶ 74(b).

19
20
21
22
23
24
25
26
27
28

Plaintiffs also allege that the City of Concord (and Chief Swanger), the City of Antioch (and Chief Contando), and Contra Costa County (and District Attorney Peterson) maintained policies and customs exhibiting deliberate indifference to the constitutional rights of individuals subjected to excessive force and other misconduct.  *See id.* ¶¶ 87-121.  As for the City of Concord, Plaintiffs allege that "[i]t was the policy and/or custom of the City of Concord to inadequately supervise and train its police officers, including the defendant Officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers." *Id.* ¶ 90.  Specifically, the City of Concord "did not require appropriate in-service training or re-training of officers" "who were known to have engaged in police misconduct involving excessive force and false arrest" or "on issues of use of force, use of lethal force, arrest procedures, execution of warrants, and other related duties." *Id.*

1   ¶¶ 90-91.  Plaintiffs allege that the City of Concord "had prior knowledge of the propensity of the

2   Individual Officers in this case to engage in unlawful acts in violation of persons['] constitutional

3   rights" but continued to employ them nevertheless.  *Id.* ¶ 92.  "[O]fficers engaged in undercover

4   work as part of the Special Investigations Bureau" ("SIB") (such as City of Concord Police

5   Detective Loercher and City of Concord Police Officers Hansen, White, Giacobazzi, and Smith, *see*

6   *id.* ¶ 9), "are given free reign to engage in unconstitutional conduct which is tolerated and authorized

7   within the department."  *Id.* ¶ 93; *see also id.* ¶ 95.  Lastly, Plaintiffs allege that Chief Swanger, who

8   "is a policy maker for the City of Concord," "authorized, directed, and ratified the actions of the

9   Individual defendant Officers" (presumably the Concord Officer Defendants).  *Id.* ¶ 94.

10      As for the City of Antioch and Contra Costa County, Plaintiffs allege that "[i]t was the policy

11   and/or custom" of the Antioch Police Department to inadequately supervise and train its officers,

12   and of the Contra Costa County District Attorney's Office to inadequately supervise and train its

13   investigators, "regarding proper and lawful police misconduct investigations, and to instruct them to

14   assist local law enforcement in concealing misconduct, thereby failing to adequately discourage

15   further constitutional violations on the part of its investigators."  *Id.* ¶¶ 102, 114.  Specifically, the

16   Antioch Police Department and the Contra Costa County District Attorney's Office "did not require

17   appropriate in-service training or re-training of officers on the subject matter of lawful and proper

18   police misconduct investigations" or "on issues of use of force, use of lethal force, arrest procedures,

19   execution of warrants, and other related duties for which they would ordinarily be called upon to

20   conduct investigations."  *Id.* ¶¶ 102-03, 114-15.  Plaintiffs allege that the Antioch Police Department

21   and the Contra Costa County District Attorney's Office "had prior knowledge of the propensity of

22   the Concord Police Department and Concord Police Officers" (in the case of both the Antioch Police

23   Department and the Contra Costa County District Attorney's Office), and of "the Antioch Police

24   Department and Antioch Police Officers" (in the case of the Antioch Police Department) "to engage

25   in unlawful acts in violation of persons['] constitutional rights, particularly with regard to excessive

26   force, and yet took no disciplinary action, nor any other action to prevent further constitutional

27   violations."  *Id.* ¶¶ 104, 116.  Instead, the Antioch Police Department and the Contra Costa County

28   District Attorney's Office "allow[ed] them to engage in the alleged conduct unfettered by lawful

limitations that should have been placed on them." *Id.* ¶¶ 104, 116.  With respect to Contra Costa County, Plaintiffs allege that "there is a long history of tolerating the infringements of citizens[']
constitutional rights by law enforcement agencies, supported by the District Attorney's Office," like "special investigations units such as . . . East NET, CNet, and other undercover narcotics investigation units similar to the SIB unit in this case." *Id.* ¶ 105.  Finally, Plaintiffs allege that Chief Contando, who "is a policy maker for the City of Antioch," "authorized, directed[,] and ratified the actions of the Antioch Police Officers and the Concord Police Officers acting within his jurisdiction." *Id.* ¶ 117.  They also allege that Contra Costa County District Attorney Peterson, who "is a policy maker for the County of Contra Costa," "authorized, directed[,] and ratified the actions of the District Attorney's Office Investigators." *Id.* ¶ 106.

## II. PROCEDURAL HISTORY

Plaintiffs instituted this action on February 4, 2014, *see* Complaint, ECF No. 1, and thereafter filed a First Amended Complaint as a matter of right, *see* FAC, ECF No. 11.  Upon Defendants' motions, the court dismissed the First Amended Complaint without prejudice because it did not comport with the notice pleading standings under Rule 8(a), as it did not clearly specify which Plaintiffs bring which claims against which Defendants.  *See* 7/22/2014 Order, ECF No. 46 at 5-8. Plaintiffs thereafter timely filed their Second Amended Complaint.  *See* SAC, ECF No. 48.  In it, they bring twelve claims, which are summarized in the chart below:

| No. | Claim | Brought By | Brought Against |
|-----|-------|------------|-----------------|
| 1 | The title says 42 U.S.C. § 1983, and the paragraphs mention the violation of "Plaintiff's" 4th Amendment rights to be free from unlawful seizure and excessive force and "Plaintiff's" 14th Amendment rights not be deprived of life and liberty without due process of law, to familial association, and to the provision of emergency medical care. | Estate of Charles Burns | The title says "Concord Officer Defendants," which Plaintiffs defined as including Detective Loercher (but not Detective Parodi), Officers Hansen, White, Giocabazzi, Smith, Montero, Price, Passama, Miovas, Cain, and Switzer, and Doe 1. |

UNITED STATES DISTRICT COURT
For the Northern District of California

| 2 | The title says 42 U.S.C. § 1983, and the paragraphs mention the conspiracy to violate "Plaintiff's" 4th Amendment rights to be free from unlawful seizure and excessive force and "Plaintiff's" 14th Amendment rights not be deprived of life and liberty without due process of law, to familial association, and to the provision of emergency medical care." | Estate of Charles Burns | The title says "Concord Officer Defendants," which Plaintiffs defined as including Detective Loercher (but not Detective Parodi), Officers Hansen, White, Giocabazzi, Smith, Montero, Price, Passama, Miovas, Cain, and Switzer, and Doe 1. |
| 3 | The title says 42 U.S.C. § 1983, and the paragraphs mention the violation of "Mr. Lawrence's 4th amendment and 14th amendment rights by means of illegal detention, prolonged unjustified detention, unlawful arrest, and false imprisonment." | Bobby Lawrence | All Defendants |
| 4 | The title says 42 U.S.C. § 1983. and the paragraphs mention the violation of John Burns's and Tammy Burns's 14th Amendment rights to familial association | John Burns; Tammy Burns | The title says "Concord Officer Defendants," which Plaintiffs defined as including Detective Loercher (but not Detective Parodi), Officers Hansen, White, Giocabazzi, Smith, Montero, Price, Passama, Miovas, Cain, and Switzer, and Doe 1. |
| 5 | The title says "Conspiracy to Violate Civil Rights—42 U.S.C. § 1983," and the paragraphs mention the violation of John Burns's, Tammy Burns's, and Bobby Lawrence's rights to "access to the criminal justice system and the rights, privileges, and benefits associated with the Victims Bill of Rights," Cal. Const., Art. I, Sec. 28. | John Burns; Tammy Burns; Bobby Lawrence | All Defendants |
| 6 | The title says 42 U.S.C. § 1983 and mentions *Monell v. Department of Soc. Servs.*, 463 U.S. 658 (1978). | All Plaintiffs | City of Concord; Chief Swanger |
| 7 | The title says 42 U.S.C. § 1983 and mentions *Monell v. Department of Soc. Servs.*, 463 U.S. 658 (1978). | All Plaintiffs | County of Contra Costa; District Attorney Peterson |
| 8 | The title says 42 U.S.C. § 1983 and mentions *Monell v. Department of Soc. Servs.*, 463 U.S. 658 (1978). | All Plaintiffs | City of Antioch; Chief Contando |

UNITED STATES DISTRICT COURT
For the Northern District of California

| 9 | Intentional Infliction of Emotional Distress | John Burns; Tammy Burns; Estate of Charles Burns | All Defendants |
|---|---|---|---|
| 10 | Negligent Infliction of Emotional Distress | John Burns; Tammy Burns; Estate of Charles Burns | All Defendants |
| 11 | Battery | Estate of Charles Burns | The title says "Concord Officer Defendants," which Plaintiffs defined as including Detective Loercher (but not Detective Parodi), Officers Hansen, White, Giocabazzi, Smith, Montero, Price, Passama, Miovas, Cain, and Switzer, and Doe 1. |
| 12 | The title says violation of California Constitutional rights and the paragraphs mention the violation of "the right to have a lawful investigation into crimes in which they are victims" under Cal. Const., Art. I, Sec. 28. | John Burns; Tammy Burns; Bobby Lawrence | All Defendants |

The Concord Defendants, Antioch Defendants, and Contra Costa Defendants each filed motions to dismiss the Second Amended Complaint. *See* Antioch Motion, ECF No. 49; Concord Motion, ECF No. 50; Contra Costa Motion, ECF No. 51. Plaintiffs filed oppositions to the motions, and Defendants filed replies. *See* Opposition to Antioch Motion, ECF No. 58; Antioch Reply, ECF No. 63; Opposition to Concord Motion, ECF No. 60; Concord Reply, ECF No. 61; Opposition to Contra Costa Motion, ECF No. 64; Contra Costa Reply, ECF No. 65.

## ANALYSIS

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

C 14-00535 LB
ORDER

1    A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

2    not contain enough facts to state a claim to relief that is plausible on its face.  *See Twombly*, 550

3    U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

4    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

5    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a

6    'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

7    unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint attacked by a Rule

8    12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

9    provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

10   formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

11   enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555 (internal

12   citations and parentheticals omitted).

13       In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

14   and construe them in the light most favorable to the plaintiff.  *See id*. at 550; *Erickson v. Pardus*, 551

15   U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

16       If the court dismisses the complaint, it should grant leave to amend even if no request to amend

17   is made "unless it determines that the pleading could not possibly be cured by the allegation of other

18   facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc.*

19   *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

20   repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*

21   *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

22   district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

23   with leave to amend).

24   **II.  DISCUSSION**

25       **A.  Claim One**

26       Claim One is brought by the Estate of Charles Burns against the "Concord Officer Defendants,"

27   which Plaintiffs define as including Detective Loercher (but not Detective Parodi), Officers Hansen,

28   White, Giocabazzi, Smith, Montero, Price, Passama, Miovas, Cain, and Switzer, and Doe 1.  The

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Estate of Charles Burns brings the claim under 42 U.S.C. § 1983 for the violation of the Estate of Charles Burns's 4th Amendment rights to be free from unlawful seizure and excessive force and the Estate of Charles Burns's 14th Amendment rights not be deprived of life and liberty without due process of law, to familial association, and to the provision of emergency medical care.

The Concord Defendants move to dismiss the claim on three grounds: (1) Ms. Burns has not shown that she has standing to standing to assert any survival actions on behalf of the Estate of Charles Burns; (2) the Estate of Charles Burns cannot bring an excessive force claim for violations of <u>both</u> Charles Burns's Fourth Amendment right to be free from an unlawful seizure and his Fourteenth Amendment substantive due process rights; and (3) the Estate of Charles Burns lacks standing to assert a Fourteenth Amendment claim based on the deprivation of familial association.

As for the Concord Defendants' first argument, allegations of the unlawful death of a decedent may state a valid claim under 42 U.S.C. § 1983 for violation of the decedent's or decedent's survivors' substantive constitutional rights. *See Smith v. City of Fontana*, 818 F.2d 1411, 1414-15 (9th Cir.), *cert. denied*, 484 U.S. 935 (1987); *see, e.g., Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010) (§ 1983 action claiming deliberate indifference to serious medical needs brought by children of pre-trial detainee who committed suicide), *reinstated as modified by* 658 F.3d 897 (9th Cir. 2011). For example, "[i]n § 1983 actions, . . . the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action. The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action."[4] *Moreland v. Las Vegas*

---

[4]   The survival of civil rights actions under § 1983 upon the death of either the plaintiff or the defendant is an area not specifically covered by federal law. *See Robertson v. Wegmann*, 436 U.S. 584, 589 (1978). The legislative intent of § 1983 is clearly to protect not only against violent injury which cripples, however, but also that which kills. *See Brazier v. Cherry*, 293 F.2d 401, 404 (5th Cir.), *cert. denied*, 368 U.S. 921 (1961); *see also id.* at 419 (describing § 1983's precursor as "a remedy for wrongs, arsons and murders done . . . what we offer to the man whose house has been burned, as a remedy; to the woman whose husband has been murdered, as a remedy; to the children whose father has been killed, as a remedy"). When federal laws "are deficient in the provisions necessary to furnish suitable remedies," federal courts must turn to the common law as modified and

*Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (internal citation omitted); *see Smith*, 818 F.2d at 1416; *cf. Guyton v. Phillips*, 606 F.2d 248, 250-51 (9th Cir. 1979) (claim of post-death conspiracy to cover up cause of death not cognizable), *cert. denied*, 445 U.S. 916 (1980); *Cartwright v. City of Concord*, 618 F. Supp. 722, 730 (N.D. Cal. 1985) (alleged inadequacy of investigation following decedent's suicide not cognizable), *aff'd*, 856 F.2d 1437 (9th Cir. 1988).

Under California's survival statute, "a cause of action for or against a person is not lost by reason of the person's death," whether the loss or damage occurs simultaneously with or after the death. Cal. Civ. Proc. Code § 377.20(a)-(b).[5]  Such action may be commenced by the decedent's successor in interest or personal representative.  *See* Cal. Civ. Proc. Code § 377.30; *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998); *see also Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) ("Where there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law . . . .") (citing Cal. Code Civ. Proc. §§ 377.30, 377.32); *Smith*, 818 F.2d at 1416 (Fourth Amendment claim of excessive force resulting in decedent's death survives decedent's death and can be maintained by administratrix of estate); *Guyton*, 532 F. Supp. at 1164 (same).  California Code of Civil Procedure section 377.11 defines "decedent's successor in interest" as "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action."  The plaintiff has the burden of alleging and proving that he or she has standing to sue in a representative capacity or as a successor in interest.  *See Byrd*, 137 F.3d at 1131; *Rose v. City of Los Angeles*, 814 F. Supp. 878, 882 (C.D. Cal. 1993) (same); *see also Moreland*, 159 F.3d at 369-70 (where state law limited parties who could bring cause of action, Fourth Amendment claims by relatives who did not allege they were personal representatives of decedent dismissed).

---

changed by the constitution and statutes of the forum state.  *See* 42 U.S.C. § 1988; *Robertson*, 436 U.S. at 588; *Brazier*, 293 F.2d at 405-06.

[5]  California Code of Civil Procedure sections 377.20, 377.22, 377.34 and 377.42 replace California Probate Code section 573, repealed in 1992, which was the survival statute relied upon in *Smith*, 818 F.2d at 1416, and *Guyton*, 532 F. Supp. at 1164.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    The court agrees that Ms. Burns has not met her burden in this regard.  The Second Amended

2    Complaint alleges that Ms. Burns is the "personal representative" of the Estate of Charles Burns.

3    SAC, ECF No. 48 ¶¶ 7, 50.  In their opposition, Plaintiffs say that labeling her a "personal

4    representative," rather than a "successor in interest," is a "mere clerical error."  But one man's

5    clerical error is another man's pleading insufficiency.  Plaintiffs also point out that, along with the

6    original complaint, Ms. Burns filed a declaration pursuant to California Code of Civil Procedure §§

7    377.30 and 377.32 that states that she is Charles Burns's "successor in interest" as defined by

8    California Code of Civil Procedure § 377.11.  *See* Tammy Burns Declaration, ECF No. 6.  This

9    statement may be true, but it is not alleged in the Second Amended Complaint.  Accordingly, as it

10   stands now, the court finds that Ms. Burns has not met her burden to allege that she has standing to

11   sue as a successor in interest.  The court thus dismisses the claim with leave to amend to show

12   standing to sue as a successor in interest.  That being said, assuming that Ms. Burns cures the

13   standing problem, the Second Amended Complaint sufficiently alleges a Fourth Amendment claim.

14   The Concord Defendants next argue that the Estate of Charles Burns cannot bring an excessive

15   force claim for violations of <u>both</u> Charles Burns's Fourth Amendment right to be free from an

16   unlawful seizure and his Fourteenth Amendment substantive due process rights.  *See* SAC, ECF No.

17   48 ¶ 54(a), (b).  They are correct.  To the extent that the Estate of Charles Burns brings a substantive

18   due process claim against the Concord Defendants for their alleged excessive force, the claim must

19   be dismissed with prejudice.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that

20   law enforcement officers have used excessive force—deadly or not—in the course of an arrest,

21   investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

22   Amendment and its 'reasonableness' standard, rather than under a 'substantive due process'

23   approach."); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment

24   provides an explicit textual source of constitutional protection against a particular sort of

25   government behavior, that Amendment, not the more generalized notion of 'substantive due

26   process,' must be the guide for analyzing these claims.") (internal quotation marks omitted).

27   Plaintiffs contend in their opposition that the first claim "pleads far beyond just the use of

28   excessive force" by the Concord Defendants.  Opposition, ECF No. 60 at 15.  They say that their

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   claim encompasses "[w]hat occurred in this case," namely "that multiple government agencies

2   facilitated the execution[-]style murder of a citizen of this country, and have and still continue to

3   cover up, fabricate, and conceal the facts surrounding" that murder.  *Id.*  But as the Concord

4   Defendants point out, Plaintiffs provide no authority to support such a claim by the Estate of Charles

5   Burns.  *See* Reply, ECF No. 62 at 3.  All of the opinions cited by Plaintiffs involved substantive due

6   process claims brought by the parents or children of a person killed by law enforcement; they did not

7   involve claims brought by the estate of the person killed.  *See County of Sacramento v. Lewis*, 523

8   U.S. 833 (1998); *Porter v. Osborne*, 546 F.3d 1131 (9th Cir. 2008); *Moreland v. Las Vegas Metro.*

9   *Police Dep't*, 159 F.3d 365 (9th Cir. 1998); *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir.

10  1991).  They also involved claims familial deprivation (*Porter*; *Moreland*; *Curnow*) or deliberate

11  indifference (*Lewis*); they did not involve claims about an attempt to cover up an excessive force

12  violation.  Plaintiffs' argument and authority, then, do not change the court's decision.

13      Plaintiffs also contend that the Estate of Charles Burns also brings a <u>procedural</u> due process

14  claim, not just a <u>substantive</u> due process one.  *See* Opposition, ECF No. 60 at 17.  They say that the

15  Concord Defendants' "conduct in concealing the wrongful actions of the Concord Police

16  Department was authorized conduct pursuant to the LEIFI protocol."  *Id.*  This and other "county-

17  wide policies led by the [Contra Costa County] District Attorney's [O]ffice violated procedural due

18  process rights of Plaintiffs."  *Id.*

19       "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or

20  property interest protected by the Constitution; (2) a deprivation of the interest by the government;

21  (3) lack of process."  *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  To the

22  extent that the first claim even can be read to include a violation of the Estate of Charles Burns's

23  procedural due process rights, the court finds that it must be dismissed without prejudice.  Plaintiffs

24  allege no facts to show that Charles Burns was entitled to a particular procedure that he did not

25  receive, and they cite no authority to support such a claim by the Estate of Charles Burns.  All of the

26  opinions cited by Plaintiffs were completely different from this case.  *See Zinermon v. Burch*, 494

27  U.S. 113 (1990) (plaintiff challenged the voluntariness of his admission to a state-run mental

28  hospital); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) (plaintiff challenged his former

UNITED STATES DISTRICT COURT
For the Northern District of California

1   employers' compliance with labor laws); *Zimmerman v. City of Oakland*, 255 F.3d 734 (9th Cir.

2   2001) (plaintiff challenged the seizure of his property).  Moreover, Plaintiffs' allegations that the

3   LEIFI Protocol allowed Defendants' to cover up the Concord police officers' actions are more

4   properly analyzed under Plaintiffs' conspiracy or *Monell* claims.

5        Finally, the Concord Defendants argue that the Estate of Charles Burns lacks standing to assert a

6   Fourteenth Amendment claim based on the deprivation of familial association.  In their opposition,

7   Plaintiffs concede this point.  Accordingly, to the extent that the Estate of Charles Burns brings a

8   Fourteenth Amendment claim against the Concord Defendants based on the deprivation of familial

9   association, the claim must be dismissed with prejudice.

10       **B.  Claim Two**

11       Claim Two is brought by the Estate of Charles Burns against the "Concord Officer Defendants"

12  (defined as described when discussing Claim One).  The Estate of Charles Burns brings the claim

13  under 42 U.S.C. § 1983 for <u>conspiracy</u> to violate the Estate of Charles Burns's 4th Amendment

14  rights to be free from unlawful seizure and excessive force and the Estate of Charles Burns's 14th

15  Amendment rights not be deprived of life and liberty without due process of law, to familial

16  association, and to the provision of emergency medical care.

17       The Concord Defendants argue that the claim fails because Plaintiffs do not sufficiently allege

18  allegations to support a conspiracy.  "To establish liability for a conspiracy in a § 1983 case, a

19  plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate

20  constitutional rights."  *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting

21  *Mendocino Envtl. Ctr.*, 192 F.3d at 1301).  "Such an agreement need not be overt, and may be

22  inferred on the basis of circumstantial evidence such as the actions of the defendants."  *Id.* (quoting

23  *Mendocino Envtl. Ctr.*, 192 F.3d at 1301) (quotation marks omitted).  "Whether defendants were

24  involved in an unlawful conspiracy is generally a factual issue . . . ."  *Mendocino Envtl. Ctr.*, 192

25  F.3d at 1301–02 (citation omitted).  Nevertheless, "the plaintiff must state specific facts to support

26  the existence of the claimed conspiracy."  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.

27  1989) (citing *Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)); *see*

28  *also Maceachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1110 (C.D. Cal. 2009).  "To be

1    liable, each participant in the conspiracy need not know the exact details of the plan, but each

2    participant must at least share the common objective of the conspiracy." *Id.* (quoting *United*

3    *Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc))

4    (quotation marks omitted).  In addition, a plaintiff must show that an "actual deprivation of his

5    constitutional rights resulted from the alleged conspiracy."  *Hart v. Parks*, 450 F.3d 1059, 1071–72

6    (9th Cir. 2006) (quoting *Woodrum v. Woodward County.*, 866 F.2d 1121, 1126 (9th Cir. 1989))

7    (quotation marks omitted).

8         Here, the court agrees with the Concord Defendants that Plaintiffs have not sufficiently alleged

9    facts to support the existence of an agreement.  As recounted above, Plaintiffs allege that on May 10,

10   2014, thirteen Concord police officers, acting with the permission of the City of Antioch and with

11   the knowledge of Contra Costa County Deputy District Attorney Kevin Bell (who is not a Defendant

12   to this action), planned "a surveillance and undercover operation with the intent of arresting and

13   harming Charles Burns."  SAC, ECF No. 48 ¶¶ 33, 74(d).  But this allegation is conclusory, and

14   aside from it, there are no facts to support the allegation that Defendants intended to harm Charles

15   Burns when they planned the operation.  Plaintiffs say in their opposition that the "Concord Police

16   Department went in with the mentality that they would harm and use any and all force necessary to

17   detain [Charles] Burns," Opposition, ECF No. 60 at 20, but this, too, merely concludes that they

18   wanted to do harm.  Plaintiffs also say that the Concord Defendants "engaged in premeditated

19   surveillance prior to swarming upon [Mr.] Lawrence and [Charles] Burns in unmarked vehicles,"

20   and "were in radio communications with each other prior to engaging [Mr.] Lawrence and [Charles]

21   Burns and were aware of the actions of their fellow officers," *id.*, but as the Concord Defendants

22   point out in their reply, this simply shows a tactical law enforcement operation, not an intent to do

23   harm.  Although the agreement need not be overt, and may be inferred on the basis of circumstantial

24   evidence such as the actions of the defendants, Plaintiffs have not shown anything aside from

25   conclusory allegations.  This is not enough.  Accordingly, Claim Two must be dismissed without

26   prejudice.

27   **C.  Claim Three**

28        Claim Three is brought by Mr. Lawrence against all Defendants.  Mr. Lawrence brings the claim

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   under 42 U.S.C. § 1983 for the violation of his "4th amendment and 14th amendment rights by

2   means of illegal detention, prolonged unjustified detention, unlawful arrest, and false

3   imprisonment."

4       The Concord Defendants do not move to dismiss this claim, but the Antioch Defendants and the

5   Contra Costa County Defendants do, and they make several arguments each.  The Antioch

6   Defendants first argue that Mr. Lawrence's Fourteenth Amendment substantive due process claim is

7   duplicative of his Fourth Amendment claim because both are based on Defendants' allegedly illegal

8   seizure of him.  The court agrees.  To the extent that Mr. Lawrence brings a substantive due process

9   claim against the Antioch Defendants for their alleged illegal seizure of him, the claim must be

10  dismissed with prejudice.  *See Graham*, 490 U.S. at 395.  The authorities cited by Plaintiff—*Lewis*,

11  *Porter*, *Moreland*, and *Curnow*—are distinguishable, as the court explained when discussing Claim

12  One.

13      Plaintiffs contend in their opposition that Mr. Lawrence also brings a <u>procedural</u> due process

14  claim, not just a <u>substantive</u> due process one.  *See* Opposition, ECF No. 58 at 14.  They say that "the

15  actions taken by the Antioch Police Department, which were implemented and followed by Chief

16  Conta[n]do and Officer Stenger pursuant to Department policies and county-wide policies led by the

17  [Contra Costa County] District Attorney's [O]ffice violated procedural due process rights of

18  Plaintiffs."  *Id.*  To the extent that the third claim even can be read to include a violation of Mr.

19  Lawrence's procedural due process rights, the court finds that it must be dismissed without

20  prejudice.  As the Antioch Defendants note, Plaintiffs allege no facts to show that Mr. Lawrence was

21  entitled to any particular procedure that he did not receive.  The allegations surrounding Mr.

22  Lawrence's arrest and subsequent questioning show only that he was arrested and taken to the

23  Antioch police station "where Concord and Antioch officers, and representatives from the Contra

24  Costa County District Attorney's Office held him without legal justification and against his will, and

25  subjected him to aggressive and unwarranted harassment in an effort to elicit false and misleading

26  information from him."  *Id.*  During this time, Antioch Police Officer Stenger and others screamed at

27  and intimidated Mr. Lawrence, and he "was subjected to hours of unlawful and disturbing

28  interrogation and ultimately released after having to post bail."  *Id.*  They also "fabricated a

statement" from Mr. Lawrence by starting and stopping a digital recording device several times and then splicing together separate pieces of information out of their original context. *Id.* ¶ 36.  Mr. Lawrence's contention that he was arrested and held without legal justification support a Fourth Amendment claim, not a procedural due process one, and his contention that he was yelled at during an aggressive interrogation do not support a procedural due process claim.  And all of the opinions cited by Plaintiffs were completely different from the context here.  *See Zinermon v. Burch*, 494 U.S. 113 (1990) (plaintiff challenged the voluntariness of his admission to a state-run mental hospital); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) (plaintiff challenged his former employers' compliance with labor laws); *Zimmerman v. City of Oakland*, 255 F.3d 734 (9th Cir. 2001) (plaintiff challenged the seizure of his property).

The Antioch Defendants next argue that Mr. Lawrence's claim must be dismissed insofar as he brings it against Chief Contando, who is sued in his official capacity only.  *See* SAC, ECF No. 48 ¶ 25.  One district court has recently summarized the law in this area:

> Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  The U.S. Supreme Court has further explained:
>
>> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law . . . .  Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.
>
> *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citations omitted).
>
> An official capacity action is not against the public employee personally, "for the real party in interest is the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. 3099, 87 L.Ed.2d 114.  "An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff*, 533 F.3d 780, 799 (9th Cir. 2008).
>
> Local government officials sued in their official capacities are "persons" under section 1983 in cases where a local government would be suable in its own name. Monell, 436 U.S. at 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611.  "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal.1997) (citing *Vance*, 928 F. Supp. at 996).  "Section 1983 claims against government officials in

their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir.2002).

"[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Luke*, 954 F. Supp. at 204. As the district court in *Luke*, 954 F. Supp. at 204, explained:

A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

*Arres v. City of Fresno*, No. CV F 10–1628 LJO SMS, 2011 WL 284971, at *5-6 (E.D. Cal. Jan. 26, 2011) (dismissing claims against government officials who were named in their official capacities in light of the claims against the entities they worked for).

Here, Mr. Lawrence has sued both the City of Antioch and Chief Contando in his official capacity. Because Chief Contando is redundant, the court dismisses with prejudice Mr. Lawrence's claim insofar as he brings it against Chief Contando in his official capacity.[6]

The Antioch Defendants next argue that the City of Antioch must be dismissed from this claim because it can be sued for constitutional violations under *Monell* only, and Plaintiffs already are suing the City of Antioch under *Monell* in Claim Eight. They are right. It is black-letter law that a city is not liable under *respondeat superior* simply because its employees commit a tort. *See Monell*, 436 U.S. at 691. Instead, as Plaintiffs themselves acknowledge, *see* Opposition, ECF No. 58 at 14-15, municipalities may be held liable for Section 1983 violations only when (1) an official policy causes a constitutional tort, (2) a local government has a policy of deliberate inaction that amounts to a failure to protect constitutional rights, or (3) a municipality's failure to train its employees amounts to an intentional indifference to the rights of persons with whom those

_____

[6] Plaintiffs do not contest that they indeed do allege this. Instead, they argue that their claim is proper because they alleged that Chief Contando "acted on behalf of the City of Antioch, individually and in concert with other defendants named and unnamed herein." Opposition, ECF No. 58 at 16 (citing SAC, ECF No. 48 ¶ 26). This allegation has nothing to do with whether Chief Contando was sued in his official capacity, his personal capacity, or both. Plainly, the Second Amended Complaint alleges that Chief Contando was sued in his official capacity only.

UNITED STATES DISTRICT COURT
For the Northern District of California

employees are likely to come in contact.  *See*, *e.g.*, *id.*; *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir. 1992); *Lee v. City of Los Angeles*, 250 F.3d 668, 681-83 (9th Cir. 2001).  Here, Plaintiffs—including Mr. Lawrence—bring a *Monell* claim against the City of Antioch (and Chief Contando) in Claim 8, so reading Claim 3 to include a *Monell* claim against the City of Antioch in this claim is not necessary.  Claim 3 also does not contain any *Monell*-like allegations (i.e., something about a policy, etc.), while Claim 8 does.  Accordingly, the court concludes that the City of Antioch must be dismissed with prejudice from Claim 3.

The Contra Costa Defendants also make a couple of arguments.  They first argue that Contra Costa County should be dismissed from the claim because, like the City of Antioch, it can be liable for constitutional violations under *Monell*, and it already has been named in a separate Monell claim brought by Plaintiffs (Claim Seven).  The court agrees and dismisses with prejudice Contra Costa County from this claim for the same reasons as it dismissed the City of Antioch.

Next, the Contra Costa County Defendants point out that (non-*Monell*) liability under § 1983 requires an individual defendant to have personally participated in the alleged constitutional violation.  Indeed, as one district court has explained:

> "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  *Leer v. Murphy*, 844 F.2d 628, 632–633 (9th Cir.1988).  "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."  *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation."  *Leer*, 844 F.2d at 633.

> A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct."  Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation."  *Jones*, 297 F.3d at 935.  "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation."  *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation."  *Blankenhorn*, 485 F.3d at 481, n.12.

*Hillblom v. County of Fresno*, 539 F. Supp. 2d 1192, 1205-06 (E.D. Cal. 2008).

UNITED STATES DISTRICT COURT
For the Northern District of California

1    The Contra Costa County Defendants say that, according to Plaintiffs' allegations, of the three

2    individual Contra Costa Defendants (District Attorney Peterson, District Attorney's Office employee

3    Grove, and Inspector Conaty), only Inspector Conaty had any personal involvement with Mr.

4    Lawrence, the only Plaintiff bringing this claim.  They then argue that Inspector Conaty's alleged

5    conduct—screaming at and intimidating Mr. Lawrence in an attempt to get him to provide a

6    statement that "would conceal the true unlawful and heinous conduct of the officers and cast blame

7    on [Mr.] Lawrence and [Charles] Burns," and "fabricat[ing] a statement" from Mr. Lawrence by

8    starting and stopping a digital recording device several times and then splicing together separate

9    pieces of information out of their original context to produce a "falsified written investigative

10   report" that supported the "cover-up" of Charles Burns's killing—does not support a claim based on

11   an alleged "illegal detention, prolonged unjustified detention, unlawful arrest, and false

12   imprisonment," which is what Mr. Lawrence's claim is based upon.  Inspector Conaty, they say, was

13   not involved with the arrest and detention of Mr. Lawrence; that was done by the Concord

14   Defendants and the Antioch Defendants.  Inspector Conaty, on the other hand, simply interrogated

15   Mr. Lawrence (albeit in a manner that Mr. Lawrence did not like) while he was being detained.

16   The court agrees with the Antioch Defendants that Plaintiffs have not alleged that District

17   Attorney Peterson and District Attorney's Office employee Grove were personally involved with the

18   arrest and detention of Mr. Lawrence and that Inspector Conaty's interrogation of him does not

19   support the claim brought by Mr. Lawrence.  In their opposition, Plaintiffs highlight their allegation

20   that Mr. Grove "showed up on scene and one by one the [Concord police officers] entered and exited

21   the vehicle where [Mr. Grove] was seated and the groundwork was laid for fabricating the story for

22   public consumption and concealing the truth regarding the killing of Charles Burns" SAC, ECF No.

23   48 ¶ 39, but that allegation does not bear upon Mr. Lawrence.  Plaintiffs also say that Contra Costa

24   County Deputy District Attorney Kevin Bell was involved in the arrest of Mr. Lawrence.  *See*

25   Opposition, ECF No. 64 at 12-13.  Plaintiffs did allege this, *see* SAC, ECF No. 48 at ¶¶ 33, 74, but

26   Mr. Bell is not a defendant to this claim (or this action), so it is irrelevant.  Thus, the court concludes

27   that Claim Three must be dismissed without prejudice as to District Attorney Peterson, District

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Attorney's Office employee Grove, and Inspector Conaty.[7]  *See Shallowhorn v. Molina*, 572 Fed.

2   Appx. 545, 546 (9th Cir. May 15, 2014) ("The district court properly dismissed Shallowhorn's

3   claims against Warden Hedgpeth because Shallowhorn failed to allege Hedgpeth's personal

4   involvement with any constitutional violation.") (citing *Barren v. Harrington*, 152 F.3d 1193, 1194

5   (9th Cir. 1998) ("Liability under § 1983 must be based on the personal involvement of the

6   defendant.")).  To the extent not addressed above, the remainder of Claim Three survives.

7       **D.  Claim Four**

8       Claim Four is brought by John Burns and Tammy Burns against the "Concord Officer

9   Defendants" (defined as described when discussing Claim One).  They bring this claim under 42

10  U.S.C. § 1983 for the violation of their 14th Amendment rights to familial association.  The Concord

11  Defendants do not move to dismiss this claim.  It thus survives.

12      **E.  Claim Five**

13      Claim Five is brought by John Burns, Tammy Burns, and Mr. Lawrence against all Defendants.

14  They bring this claim under 42 U.S.C. § 1983 for conspiracy to violate John Burns's, Tammy

15  Burns's, and Bobby Lawrence's rights to "access to the criminal justice system and the rights,

16  privileges, and benefits associated with the Victims Bill of Rights," Cal. Const., Art. I, Sec. 28.  All

17  Defendants, through their separate motions, contend that this claim fails because it does not seek to

18  vindicate a federal right.  They are correct.

19  42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or

20  immunities secured by the Constitution or laws of the United States" by any person acting "under

21  color of any statute, ordinance, regulation, custom, or usage."  *Gomez v. Toledo*, 446 U.S. 635, 639

22  (1980).  Section 1983 is not itself a source for substantive rights, but rather a method for vindicating

23  federal rights conferred elsewhere.  *See Graham*, 490 U.S. at 393-394 (1989).  To state a claim

24  under § 1983, a plaintiff must allege: (1) the conduct complained of was committed by a person

25  acting under color of state law; and (2) the conduct violated <u>a right secured by the Constitution or</u>

─────────────────────────

27      [7] In light of this dismissal, the court does not reach the Contra Costa County Defendants'
    argument that District Attorney Peterson, District Attorney's Office employee Grove, and Inspector
28  Conaty are entitled to qualified immunity.  *See* Motion, ECF No. 51 at 12-14.

1   laws of the United States.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Through Claim Five, John

2   Burns, Tammy Burns, and Mr. Lawrence seek to vindicate rights secured by the California

3   Constitution, namely their rights to "access to the criminal justice system and the rights, privileges,

4   and benefits associated with the Victims Bill of Rights," Cal. Const., Art. I, Sec. 28.  They concede

5   that they do not "explicitly" identify any federal right in Claim Five.  *See* Opposition to Antioch

6   Motion, ECF No. 58 at 19-20,

7        The court is not willing to consider a § 1983 claim that does not allege a violation of a federal

8   right, *see West*, 487 U.S. at 48, and Plaintiffs' statements in their opposition briefs do no suffice.

9   Indeed, in their oppositions, they refer to their "federal right to seek civil redress in a 42 U.S.[C. § ]

10   1983 action by unfettered access to non-fabricated information by government investigation is

11   without dispute."  Opposition to Antioch Motion, ECF No. 58 at 20.  They also say that they "were

12   denied access to court to seek justice in the criminal courts against the officers and individuals for

13   Defendant[s'] illegal actions" and were "denied the ability to seek restitution against Defendants for

14   their illegal actions," and that Defendants violated their "rights to access the courts and to seek

15   criminal justice and civil restitution as victims of a crime."  Opposition to Concord Motion, ECF No.

16   60 at 21-22.  This is hardly a clear expression of a federal right, and the court is not convinced that

17   all of them even exist.  To the extent that John Burns, Tammy Burns, and Mr. Lawrence seek to

18   vindicate a federal right of access to courts, they need to allege it.  *See*, *e.g.*, *Christopher v. Harbury*,

19   536 U.S. 403, 415 (2002) (discussing the "unsettled . . . basis of the constitutional right of access to

20   courts"); *Chappel v. Rich*, 340 F.3d 1279, 1282-83 (11th Cir. 2002) (interference with the right of

21   court access by state agents who intentionally conceal the true facts about a crime may be actionable

22   as a deprivation of constitutional rights under 42 U.S.C. §§ 1983 and 1985); *Ryland v. Shapiro*, 708

23   F.2d 967, 972 (5th Cir. 1983) (allegation "that agents of the state intentionally engaged in conduct

24   that interfered with [the plaintiffs'] exercise of their constitutionally protected right to institute a

25   wrongful death suit" offered a valid theory of recovery); *Bell v. City of Milwaukee*, 746 F.2d 1205,

26   1261 (7th Cir. 1984) ("a conspiracy to cover up a killing, thereby obstructing legitimate efforts to

27   vindicate the killing through judicial redress, interferes with the due process right of access to

28   courts").  To the extent they seek to vindicate a federal right "to seek criminal justice" or to a certain

C 14-00535 LB
ORDER

1  kind of investigation or prosecution done, there is no such right. *See Nelson v. Skehan*, 386 Fed.

2  Appx. 783, 786 (10th Cir. 2010) ("Nelson has no constitutional right to have the Skehans and Trout

3  prosecuted.") (citing *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1566–67 (10th Cir. 1993)); *Flores v.*

4  *Satz*, 137 F.3d 1276, 1278 (11th Cir. 1998) ("That the prosecution did not investigate properly or

5  prosecute expeditiously the charges against him does not violate clearly established constitutional

6  rights."). Accordingly, the court must dismiss without prejudice Claim Five.

7      **F. Claim Six**

8      Claim Six is brought by all Plaintiffs against the City of Concord and Chief Swanger. Plaintiffs

9  bring this claim under 42 U.S.C. § 1983 and *Monell*. The Concord Defendants do not move to

10  dismiss this claim. It thus survives.

11     **G. Claims Seven and Eight**

12     Claim Seven is brought by all Plaintiffs against the County of Contra Costa and District Attorney

13  Peterson, and Claim Eight is brought by all Plaintiffs against the City of Antioch and Chief

14  Contando. Plaintiffs bring this claim under 42 U.S.C. § 1983 and *Monell*.

15     As an initial matter, District Attorney Peterson has been sued in both his official and his

16  individual capacities, *see* SAC, ECF No. 48 ¶¶ 17, and Chief Contando has been sued in his official

17  capacity only, *see id.* ¶ 25. As discussed earlier, because it is redundant to sue both the County of

18  Contra Costa and District Attorney Peterson in his official capacity, and the City of Antioch and

19  Chief Contando in his official capacity, the court dismisses with prejudice Claims Seven and Eight

20  to the extent they are brought against District Attorney Peterson and Chief Contando in their official

21  capacities.

22     Theoretically, District Attorney Peterson (and Chief Contando, if he was sued in his individual

23  capacity) could be sued under § 1983 in his individual capacity for so-called supervisory liability.

24  "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her

25  personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between

26  the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202,

27  1207 (9th Cir. 2011) (internal quotation marks and citation omitted). "A supervisor can be liable in

28  his individual capacity for his own culpable action or inaction in the training, supervision, or control

UNITED STATES DISTRICT COURT
For the Northern District of California

1   of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that

2   showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (quoting *Watkins v.*

3   *City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).  To adequately plead such a claim,

4   "allegations in a complaint . . . may not simply recite the elements of a cause of action, but must

5   contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party

6   to defend itself effectively." *Id*. at 1216.  These factual allegations "must plausibly suggest an

7   entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

8   expense of discovery and continued litigation." *Id*.

9        The problem here is that Claim Seven is, as its title confirms, a *Monell* claim.  And a *Monell*

10   claim may be brought only against a municipality, not an individual.  *See Guillory v. Orange*

11   *County*, 731 F.2d 1379, 1382 (9th Cir. 1984) ("*Monell* does not concern liability of individuals

12   acting under color of state law.").  Thus, to the extent that Plaintiffs bring their *Monell* claim against

13   District Attorney Peterson in his individual capacity, the claim is dismissed with prejudice.  *See*

14   *Smith v. County of Santa Cruz*, No.: 13–CV–00595 LHK, 2014 WL 3615492, at *11 (July 22, 2014)

15   (dismissing with prejudice plaintiff's *Monell* claim against individual defendants).[8]

16        This leaves the County of Contra Costa and the City of Antioch.  As is well-known, local

17   governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or

18   custom causes a constitutional tort.  *See Monell*, 436 U.S. at 690.  A municipality, however, may not

19   be held vicariously liable for the unconstitutional acts of its employees under the theory of

20   *respondeat superior*.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436

21   U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).  To impose municipal

22   liability under § 1983 for a violation of constitutional rights, a plaintiff must show that: (1) the

23   plaintiff possessed a constitutional right of which he or she was deprived; (2) the municipality had a

24   policy; (3) this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and

25

26        [8] Should Plaintiffs bring a separate supervisory liability claim against an individual in an
27   amended complaint, they must include adequate allegations.  The Ninth Circuit recently suggested
     that a plaintiff's high-level allegations are insufficient to support a supervisory liability claim under
28   § 1983.  *See Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012).

(4) the policy is the moving force behind the constitutional violation.  *See Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Liability based on a municipal policy may be satisfied in one of three ways: (1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity; (2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority, and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives; or (3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it.  *See Fuller*, 47 F.3d at 1534; *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. ----, 131 S.Ct. 1350, 1359 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ")).  "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton*, 489 U.S. at 388).  Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389; *see Connick*, 131 S.Ct. at 1359-60.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 410 (1997).  "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens'

constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 131 S.Ct. at 1360 (citing *Bryan Cty.*, 520 U.S. at 407). "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* (quoting *City of Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities . . . .'" *Id.* (quoting *City of Canton*, 489 U.S. at 392); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . . ."). Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (quoting *Bryan County*, 520 U.S. at 409). "Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" *Id.* (quoting *Bryan County*, 520 U.S. at 407 (internal quotation marks omitted)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

For their *Monell* claims, Plaintiffs try to establish Contra Costa County's and the City of Antioch's liability in a few different ways. First, Plaintiffs allege that they are liable because their employees committed the alleged constitutional violations under a formal governmental policy or longstanding practice or custom that is their customary operating procedures. Specifically, Plaintiffs allege that Contra Costa County and the City of Antioch instructed their investigators and officers, respectively, "to assist local law enforcement in concealing misconduct." SAC, ECF No. 48 ¶¶ 102, 114. Although it is not explicitly mentioned in the paragraphs in Claims Seven and Eight, Plaintiffs presumably refer to the LEIFI Protocol, which they described as "a powerful tool for covering up police misconduct" that "serve[s] as a means for [the Contra Costa County investigators and the City

1   of Antioch police officers] to work together to conceal police misconduct." *Id.* ¶ 43; *see also id.* ¶

2   73(c).  But aside from these conclusory statements, Plaintiffs do not ever really allege what the

3   LEIFI Protocol is.  They allege that it was "conceived as a means for deploying multiple law

4   enforcement agencies and resources to conduct a swift, efficient[,] and transparent investigation

5   involving police officer misconduct," *id.*, but this does not explain how the LEIFI Protocol works

6   (or is supposed to work) or how it would allow Contra Costa County or the City of Antioch to

7   conceal police misconduct.  Without explaining what the LEIFI Protocol is or does, Plaintiffs cannot

8   sufficiently allege how it is "the moving force" behind the alleged cover-up.  In other words, as it is

9   now described, the court cannot see how or why the LEIFI Protocol allowed Contra Costa County or

10  the City of Antioch to conceal police misconduct.

   Second, Plaintiffs allege that Contra Costa County and the City of Antioch are liable because

12  they failed to adequately supervise and train their investigators and officers, respectively, "regarding

13  proper and lawful police misconduct investigations."  SAC, ECF No. 48 ¶¶ 102, 114.  As mentioned

14  above, a failure to train may, in limited circumstances, rise to the level of an official government

15  policy for purposes of a § 1983 claim.  Here, Plaintiffs allege that the Contra Costa County District

16  Attorney's Office and the Antioch Police Department "did not require appropriate in-service training

17  or re-training of officers on the subject matter of lawful and proper police misconduct

18  investigations" or "on issues of use of force, use of lethal force, arrest procedures, execution of

19  warrants, and other related duties for which they would ordinarily be called upon to conduct

20  investigations," even though they "had prior knowledge of the propensity of the Concord Police

21  Department and Concord Police Officers to engage in unlawful acts in violation of persons[']

22  constitutional rights, particularly with regard to excessive force, and yet took no disciplinary action,

23  nor any other action to prevent further constitutional violations."  *Id.* ¶¶ 102-04, 114-16.

24      There are a few problems with this.  First, Plaintiffs' allegations that the Contra Costa County

25  District Attorney's Office and the City of Antioch failed to train their own investigators and officers

26  because of the Concord Police Officers,' rather than the Contra Costa County District Attorney's

27  Office investigators' or the Antioch Police Officers,' propensity to use excessive force, do not

28  support a claim against the Contra Costa County District Attorney's Office and the City of Antioch.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   The Contra Costa County District Attorney's Office and the City of Antioch are not responsible for

2   training the Concord Police Officers, and there are no allegations that Contra Costa County District

3   Attorney's Office investigators or Antioch Police Officers, as opposed to Concord Police Officers,

4   used excessive force.

5   Second, Plaintiffs' allegations that the Contra Costa County District Attorney's Office and the

6   City of Antioch failed to train their investigators and officers, respectively, about how to conduct a

7   police misconduct investigation are not sufficient, either, because Plaintiffs allege no facts (as

8   opposed to conclusions) that the Contra Costa County District Attorney's Office and the City of

9   Antioch were deliberately indifferent to the constitutional rights of citizens.  They do not allege facts

10  to show that either entity was on notice that its "policy of inaction" caused constitutional violations,

11  nor do they allege facts to show that there was a "pattern of similar constitutional violations by

12  untrained employees," even though the allegation of such facts is "ordinarily necessary" to proceed

13  on a failure-to-train theory.  *See Connick*, 131 S.Ct. at 1360.  Indeed, a single incident cannot sustain

14  a failure to train except in the "rare" circumstance that "the unconstitutional consequences of failing

15  to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-

16  existing pattern of violations."  *Id.* at 1361 (noting that the *City of Canton* court hypothesized that a

17  failure to train claim could be shown where the municipality "arms its police force with firearms and

18  deploys the armed officers into the public to capture fleeing felons without training the officers in

19  the constitutional limitation on the use of deadly force.").  Simply put, Plaintiffs do not allege facts

20  to show that the Contra Costa County District Attorney's Office and the City of Antioch knew that

21  their investigators and officers were violating the constitutional rights of citizens while conducting

22  police misconduct investigations, but did not to train them anyway.  Plaintiffs' allegation that, at

23  least with respect to Contra Costa County, "there is a long history of tolerating the infringements of

24  citizens['] constitutional rights by law enforcement agencies, supported by the District Attorney's

25  Office," like "special investigations units such as . . . East NET, CNet, and other undercover

26  narcotics investigation units similar to the SIB unit in this case," *id.* ¶ 105, is too vague and generic

27  to suffice.

28  Third, Plaintiffs allege that Contra Costa County and the City of Antioch are liable because

officials with final policymaking authority, namely District Attorney Peterson and Chief Contando,

"authorized, directed[,] and ratified" their subordinates' unconstitutional decisions or actions and the

bases for them.  SAC, ECF No. 48 ¶¶ 106, 117.  Plaintiffs provide no other details about District

Attorney Peterson's and Chief Contando's alleged authorization, direction, or ratification within the

paragraphs of Claims Seven and Eight.  And to the extent that Plaintiffs' claim is based upon

District Attorney Peterson's and Chief Contando's "personal[] authoriz[ation] and maint[enance]" of

the LEIFI Protocol, *id.* ¶ 74(b), because (as discussed above) Plaintiffs fail to explain how or why

the LEIFI Protocol allowed Contra Costa County or the City of Antioch to conceal police

misconduct, this allegation also fails to support these claims.

Accordingly, the court dismisses without prejudice Claims Seven and Eight.

**H.  Claim Nine**

Claim Nine is brought by John Burns, Tammy Burns, and the Estate of Charles Burns

against all Defendants for intentional infliction of emotional distress.  In California, "[a] cause of

action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous

conduct by the defendant with the intention of causing, or reckless disregard of the probability of

causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3)

actual and proximate causation of the emotional distress by the defendant's outrageous conduct."

*Kelley v. Conco Companies*, 196 Cal. App. 4th 191, 215 (2011).  "A defendant's conduct is

outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized

community."  *Id.* (internal quotation marks omitted).

Defendants are correct that John Burns and Tammy Burns's claim fails because Plaintiffs do not

allege that Defendants directed their conduct at either of them.  *See Copeland v. County of Alameda*,

No. 12–cv–04286–JST, 2014 WL 1266198, at *3 (citing *Christensen v. Superior Court*, 54 Cal. 3d

868, 906 (1991) (holding that plaintiffs lacked "standing to sue for intentional infliction of emotional

distress" because they "have not alleged that the conduct of any of the defendants was directed

primarily at them, was calculated to cause them severe emotional distress, or was done with

knowledge of their presence and of a substantial certainty that they would suffer severe emotional

injury").  In their oppositions, Plaintiffs says that Defendants' alleged cover-up of their illegal

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1 actions have caused emotional distress to John Burns and Tammy Burns, but this is not the issue.

2 The issue is whether Defendants directed their conduct toward John Burns and Tammy Burns, and

3 Plaintiffs do not allege that they did anywhere in the Second Amended Complaint.

4 Defendants also are correct that the Estate of Charles Burns cannot assert an intentional

5 infliction of emotional distress claim because emotional distress damages do not survive the death of

6 the person who suffered them.  *See id.* (citing *Berkley v. Dowds*, 152 Cal. App. 4th 518, 530 (Cal.

7 Ct. App. 2007) (holding that a complaint failed to state a claim for intentional infliction of emotional

8 distress because emotional distress damages do not survive a person's death)); *see also* Cal. Code

9 Civ. P. § 377.34 (providing that "[i]n an action or proceeding by a decedent's personal representative

10 or successor in interest on the decedent's cause of action, the damages recoverable are limited to the

11 loss or damage that the decedent sustained or incurred before death, including any penalties or

12 punitive or exemplary damages that the decedent would have been entitled to recover had the

13 decedent lived, and *do not include damages for pain, suffering, or disfigurement* ") (emphasis

14 added).

15 As for the City of Antioch's and Contra Costa County's arguments regarding statutory

16 immunity, one district court has explained the relevant legal landscape:

17     California holds public entities responsible for the tortious acts of its employees
    under the doctrine of vicarious liability, and it grants immunity to public entities only
18     where the public employee would also be immune.  *See Tien Van Nguyen v. City of
    Union City*, C–13–01753–DMR, 2013 WL 3014136 (N.D. Cal. June 17, 2013) (citing
19     Cal. Gov. Code § 815.2; *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir.
    2002)).  However, public entities cannot be held directly liable unless a specific
20     statutory basis exists.  *See Herrera v. City of Sacramento*, 2:13–CV–00456 JAM–AC,
    2013 WL 3992497, at *7 (E.D. Cal. Aug. 2, 2013) (citing *Zelig v. County of Los
21     Angeles*, 27 Cal. 4th 1112, 1127 (2002)) ("there is a clear distinction between holding
    a public entity vicariously liable for the acts of their employees and holding it directly
22     liable").  "[D]irect tort liability of public entities must be based on a specific statute
    declaring them to be liable, or at least creating some specific duty of care. . . ."
23     *Herrera*, 2013 WL 3992497, at *7 (quoting *Eastburn v. Regional Fire Prot. Auth.*, 31
    Cal. 4th 1175, 1183 (2003)).

24

25 *Mathews v. City of Oakland Police Dep't*, No. 12-cv-03235-JCS, 2013 WL 6057689, at *22 (N.D.

26 Cal. Nov. 14, 2013).  Here, the City of Antioch and Contra Costa County argue that Plaintiffs have

27 not identified a specific statutory basis for John Burns, Tammy Burns, and the Estate of Charles

28 Burns's intentional infliction of emotional distress claim, so the City of Antioch and Contra Costa

County cannot be directly liable. They are right. But as Plaintiffs point out, they theoretically could be vicariously liable for the acts of their employees. The problem with this is that Plaintiffs have failed to sufficiently allege a claim for intentional infliction of emotional distress against any individual defendant, and they have not alleged facts to support vicarious liability.

Accordingly, the court dismisses Claim Nine without prejudice as to John Burns and Tammy Burns and with prejudice as to the Estate of Charles Burns.[9]

**I. Claim Ten**

Claim Ten is brought by John Burns, Tammy Burns, and the Estate of Charles Burns against all Defendants for negligent infliction of emotional distress. Negligent infliction of emotional distress is a form of the tort of negligence. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993). Accordingly, to establish a claim for negligent infliction of emotional distress, plaintiff must allege each of the following elements of negligence: (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Id.*; *see Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) (elements for negligent infliction of emotional distress include (1) defendant engaged in negligent conduct involving usual issues of duty and breach, (2) plaintiff suffered serious emotional distress, and (3) defendant's conduct was a substantial factor in causing the emotional distress suffered by plaintiff).

A duty to the plaintiff may be "imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993) (citing *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 590 (1989)). The California Supreme Court has made clear that there is no duty to avoid negligently causing emotional distress to another. *Id.* at 984.

> [U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the

---

[9] Because the court has given Plaintiffs another opportunity to allege and clarify their intentional infliction of emotional distress claim—and therefore the conduct alleged to form the basis of the claim may change—the court does not reach the Contra Costa Defendants' argument that prosecutorial immunity bars the claim against them. The Contra Costa Defendants may make this argument again should Plaintiffs' re-allege their claim against them.

UNITED STATES DISTRICT COURT
For the Northern District of California

> duty must threaten physical injury, not simply damage to property or financial interests.

*Id.* at 985.  Therefore, a plaintiff must either allege a duty owed the plaintiff regarding his emotional condition or allege that his emotional distress arises out of defendant's breach of some other legal duty.  *See Brahmana v. Lembo*, No. C–09–00106 RMW, 2010 WL 290490, at *2 (N.D. Cal. Jan. 15, 2010).

In their Second Amended Complaint, Plaintiffs simply allege that "Defendants had a duty of reasonable care toward Plaintiffs John Burns, Tammy Burns, and decedent Charles Burns."  SAC, ECF No. 48 ¶ 127.  In their oppositions, Plaintiffs clarify that they believe that Defendants had a duty to use reasonable care "during their investigation before and after their use of deadly force, and in their use of deadly force."  *See, e.g.,* Opposition to Concord Motion, ECF No. 60 at 25.  The only authority they cite for this statement, though, is *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (Cal. Ct. App. 2004), which said that California case law does "implicitly recognize a duty on the part of police officers to use reasonable care in deciding to use and in fact using deadly force."  *Id.* at 1101.  But that duty would go only to Charles Burns, not to John Burns or Tammy Burns.  Plaintiffs provide no authority supporting their claim that Defendants owed them a duty of reasonable care.  And as for the Estate of Charles Burns, it cannot assert a negligent infliction of emotional distress claim because, as explained above, emotional distress damages do not survive the death of the person who suffered them.  *See* Cal. Code Civ. P. § 377.34.  Claim Ten fails for this reason.

The City of Concord also points out Plaintiffs' failure to specify a theory of liability.  The following explanation provides the background:

> California courts recognize two categories of liability for negligent infliction of emotional distress: "bystander" liability and "direct victim" liability.  *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992).  The distinction between the two lies in the source of a defendant's duty to a plaintiff.  *Ibid.*  In bystander actions, a plaintiff may recover if she "(1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim, and, (3) as a result, suffers emotional distress beyond that which would be anticipated in a disinterested witness."  *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989).  Plaintiffs do not contend that they are bystanders to defendants' alleged negligence.
>
> Instead, plaintiffs seek recovery as direct victims.  This requires evidence of a duty "that is assumed by the defendant or imposed on the defendant as a matter of

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

law, or that arises out of a relationship between" the parties.  Marlene, 48 Cal.3d at 590.

*Turek v. Stanford Univ. Med. Ctr.*, No. C 12–00444 WHA, 2013 WL 4866331, at *2 (N.D. Cal. Sept. 12, 2013).  The City of Concord points out that Plaintiffs do not allege that either John Burns or Tammy Burns was present at the scene of Charles Burns's killing, so they cannot be proceeding on a bystander theory.  And they also point out that Plaintiffs do not allege any facts to show that any defendant assumed a duty or had one imposed by law, or that one arose out of the relationship between a defendant any John Burns or Tammy Burns.  Because Plaintiffs have not shown that there is a duty, the court need not reach this issue now.  However, upon the re-allegation of this claim in any amended complaint, Plaintiffs should be mindful of these requirements.

Accordingly, the court dismisses Claim Ten without prejudice as to John Burns and Tammy Burns and with prejudice as to the Estate of Charles Burns.[10]

**J.  Claim Eleven**

Claim Eleven is brought by the Estate of Charles Burns against the "Concord Officer Defendants" (defined as described when discussing Claim One) for battery.  The Concord Defendants do not move to dismiss this claim.

**K.  Claim Twelve**

Claim Twelve is brought by John Burns, Tammy Burns, and Bobby Lawrence against all Defendants for a violation of their "right[s] to have a lawful investigation into crimes in which they are victims" under Article I, Section 28 of the California Constitution.

Defendants each argue that there is no private right of action for damages, which is what Plaintiffs seek, that allows John Burns, Tammy Burns, and Bobby Lawrence to bring this claim against them.  They are right.  Article I, Section 28(b) enumerates a "victim's" rights, and Article I, Section 28(c) provides when and how a "victim" may enforce those rights.  Article I, Section

---

[10]  Again, because the court has given Plaintiffs another opportunity to allege and clarify their negligent infliction of emotional distress claim—and therefore the conduct alleged to form the basis of the claim may change—the court does not reach the Contra Costa Defendants' argument that prosecutorial immunity bars the claim against them.  The Contra Costa Defendants may make this argument again should Plaintiffs' re-allege their claim against them.

UNITED STATES DISTRICT COURT
For the Northern District of California

28(c)(1) provides that "[a] victim, the retained attorney of a victim, a lawful representative of the victim, or the prosecuting attorney upon request of the victim, may enforce the rights enumerated in subdivision (b) in any trial or appellate court with jurisdiction over the case as a matter of right.  The court shall act promptly on such a request."  Article I, Section 28(c)(2), however, provides that "[t]his section does not create any cause of action for compensation or damages against the State, any political subdivision of the State, any officer, employee, or agent of the State or of any of its political subdivisions, or any officer or employee of the court."  Each of the Defendants in this action is public entity or an employee of a public entity.  Therefore, under Article I, Section 28(c)(2), John Burns's, Tammy Burns's, and Bobby Lawrence's claim fails.  Accordingly, the court dismisses with prejudice Claim Twelve.

## CONCLUSION

Based on the foregoing, the court **GRANTS** Defendants' motions and dismisses the Second Amended Complaint to extent described above.  Plaintiffs may file a Third Amended Complaint by November 21, 2014.

**IT IS SO ORDERED.**

Dated: November 6, 2014

_____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California

C 14-00535 LB
ORDER

37