Peter Johnson, SBN: 165523
Law Office of Johnson & Johnson
2125 Oak Grove Rd., Ste. 315
Walnut Creek, CA 94598
(t) 925.952.8900
(f) 925.952.8902
jjlaw2@earthlink.net

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BURNS, TAMMY BURNS, BOBBY LAWRENCE, ESTATE OF CHARLES BURNS by TAMMY BURNS, Personal Representative of the Estate of Charles Burns.<br><br>        Plaintiffs,<br><br>        v.<br><br>CITY OF CONCORD, CHIEF GUY SWANGER sued in his individual capacity, Detective CHRIS LOERCHER, sued in his individual capacity, Detective FRANCISCO RAMIREZ in his individual capacity, Officer MIKE HANSEN, sued in his individual capacity, Officer STEVEN WHITE, sued in his individual capacity, Officer BRAD GIACOBAZZI, sued in his individual capacity, officer DANNY SMITH, sued in his individual capacity, Officer EDUARDO MONTERO, sued in his individual capacity, Officer STEVEN PRICE, sued and in his individual capacity, Officer JASON PASSAMA, sued in his individual capacity, Officer PAUL MIOVAS, sued in his individual capacity, Officer MATT CAIN, sued in his individual capacity, Officer MATTHEW SWITZER, sued in his individual capacity,  Lt. DAVID HUGHES, sued in his individual capacity, Deputy District Attorney BARRY GROVE, sued in his individual and official capacity, Deputy District Attorney KEVIN BELL, sued in his individual capacity, | Case No. C14-00535LB<br><br>FOURTH AMENDED COMPLAINT FOR DAMAGES<br><br>DEMAND FOR JURY TRIAL |

| JOHN CONATY, sued in his individual capacity;, TOM PARODI, sued in his individual capacity, JAMES STENGER, sued in his individual capacity, Sgt. ANTHONY MOREFIELD sued in his individual and DOES 2 through 60, inclusive. | |
| --- | --- |
| Defendants. | |

## I.   JURISDICTION and VENUE

1.   This is an action for monetary damages brought pursuant to Title 42 U.S.C. section 1983, and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution and under the common law of the State of California, and the California State Constitution Article 1 Section 28, against the City of Concord (Concord Police Department), and against Concord Police Officers, and the Contra Costa County (Contra Costa District Attorney's Office) and it representatives, and the City of Antioch (Antioch Police Department) and Antioch Police Officers.

2.   Jurisdiction is based on the fact that this case involves a federal question regarding violation of civil rights under federal law under the 4th and 14th amendments to the US Constitution, 42 U.S.C. section 1983, 1988 and under 28 U.S.C. section 1331 and 1343; The court has supplemental jurisdiction under 28 USC section 1367(a);

## II.   SUMMARY OF ACTION

3.   This action arises out of the killing of Charles Burns by the Concord Police Department; the unlawful detention and arrest of Charles Burns and Bobby Lawrence by the Concord Police Department, Antioch Police Department and Contra Costa District Attorney's Office; and the subsequent cover-up of the unlawful police activity.

a.  On May 10, 2013 Concord Police Officers used excessive, unjustified and unreasonable lethal force against Charles Burns, killing him;

b.  On the same date and time Concord Police Officers used excessive, unjustified and unreasonable force in seizing plaintiff, Bobby Lawrence; and with the assistance and direct participation of representatives from the Antioch Police Department and Contra Costa District Attorneys office subjected him to an unjustifiable prolonged detention and arrest in violation of the 4th Amendment of the U.S. Constitution.

c.  The unlawful use of excessive force and subsequent illegal detention and arrest occurred in Antioch, Contra Costa County, State of California.

d.  Following the unjustifiable killing of Mr. Burns, the defendants listed herein engaged in a course of conduct, acting in concert with one another, to conceal the true facts surrounding the death of Charles Burns and the unlawful detention and arrest of Bobby Lawrence.

### III. PARTIES

4.  Charles Burns is deceased. Prior to being killed by the police on May 10, 2013 he was a 20 year old male residing in Contra Costa County;

5.  Plaintiff, Bobby Lawrence is an adult male and resided in Bay Point, Contra Costa County at the time of the subject incident;

6.  Plaintiff, Tammie Burns, the natural mother of deceased Charles Burns was at all times an adult resident of Bay Point, Contra Costa County;

7.  Plaintiff, Estate of Charles Burns, is represented by Tammie Burns "Successor In Interest" of the Estate of Charles Burns; Mrs. Burns has filed a duly authorized declaration pursuant to California Code of Civil Procedure sections 377.30 and 377.32; Mrs. Tammy Burns, is

the mother of Charles Burns and beneficiary of his estate pursuant to the California Code of Civil Procedure Section 377.10, in light of California Probate Code Section 6402. As the beneficiary of Charles Burns' estate, Mrs. Burns is the rightful successor in interest pursuant to California Code of Civil Procedure section 377.11. No other person has superior rights to commence this immediate legal action pursuant to Probate Code 6402. Mrs. Burns' declaration was filed in this immediate case on 02/19/2014, which included the death certificate of Charles Burns. See Tammy Burns Declaration, ECF Docket No. 6.

8. Plaintiff, John Burns, is the natural father of deceased Charles Burns and was at all times relevant an adult resident of Bay Point, Contra Costa County;

9. "Concord Police Officers" Personally Involved in Killing of Charles Burns, utilizing excessive force to effectuate a false arrest of Bobby Lawrence: Special Investigations Bureau; (Hereafter "Concord Police Officers")

   a. Chris Loercher, Detective Concord Police Department, Special Investigations Bureau (hereinafter, SIB); Loercher admitted to shooting Charles Burns. Loercher is being sued in his individual capacity. Loercher's conduct as alleged herein occurred during the course and scope of his duties as a police officer for the City of Concord. Loercher acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed persons herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

   b. Francisco Ramirez (previously named herein as Doe 1), Ramirez is a Detective with the Concord Police Department, Special Investigations Bureau (SIB); Ramirez admitted to shooting Charles Burns. Ramirez is being sued in his individual capacity.

Ramirez's conduct as alleged herein occurred during the course and scope of his duties as a police officer for the City of Concord. Ramirez acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed persons herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

c.  Defendant, Mike Hansen at all times relevant herein was a Police Officer with the Concord Police Department, Special Investigations Bureau (SIB). He was the supervising officer related to the operation leading to excessive force used and false arrest of Bobby Lawrence and the killing of Charles Burns and subsequent cover-up of illegal activity.  He is sued in his individual capacity.  Hansen's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Hansen acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

d.  Defendant, Steven White, at all times relevant herein was a Police Officer with the Concord Police Department, Special Investigations Bureau (SIB). White is a potential shooter in the killing of Charles Burns, but in any event personally involved in the operation leading to the excessive force and false arrest of Bobby Lawrence and the unlawful death of Charles Burns and the subsequent cover-up of illegal activity. He is sued in his individual capacity.  White's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  White acted on behalf of the City of Concord, individually and in concert with other defendants

named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

e.  Defendant, Brad Giacobazzi at all times relevant herein was a Police Officer with the Concord Police Department, Special Investigations Bureau (SIB).  Giacobazzi is a potential shooter in the killing of Charles Burns, but in any event personally involved in the operation leading to Burns' death and the subsequent cover-up, and excessive force upon Plaintiff, Bobby Lawrence. He is sued in his individual capacity. Giacobazzi's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Giacobazzi acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

f.  Defendant, Danny Smith at all times relevant herein was a Police Officer with the Concord Police Department, Special Investigations Bureau (SIB).  Smith is a potential shooter in the killing of Charles Burns, but in any event personally involved in the operation leading to Burns' death and the subsequent cover-up, additionally excessive force and false arrest of Bobby Lawrence committing a battery by using his vehicle and assault using his firearm. He is sued in his individual capacity.  Smith's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Smith acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and

under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

10. "Concord Police Officers" personally involved in killing of Charles Burns, Special Enforcement Team, (SET); (Hereinafter "Concord Police Officers")

    a. Defendant, Eduardo Montero at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (hereinafter, SET). Montero was personally involved in the operation leading to the excessive force and false arrest of Bobby Lawrence and the death of Charles Burns and the subsequent cover-up of constitutional violations.  He is sued in his individual capacity.  Montero's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Montero acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

    b. Defendant, Steven Price at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (SET). Price was personally involved in the operation leading to excessive force and false arrest of Lawrence and death of Charles Burns and the subsequent cover-up of the constitutional conduct. He is sued in his individual capacity. Price's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Price acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes,

ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

c.  Defendant, Jason Passama at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (SET). Passama was personally involved in the operation leading to the excessive force and false arrest of Lawrence, the death of Charles Burns and subsequent cover-up of constitutional violations.  He is sued in his individual capacity.  Passama's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Passama acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

d.  Defendant, Paul Miovas at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (SET). Miovas was personally involved in the operation leading to excessive force and false arrest against Lawrence, the death of Charles Burns and the subsequent cover-up of constitutional violations. He is sued in his individual capacity. Miovas' conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Miovas acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

e.  Defendant, Matt Cain at all times relevant herein was a Police Officer with the Concord Police Department, Special Enforcement Team (SET). Cain was personally involved in the operation leading to excessive force and false arrest of Lawrence and the death of Charles Burns and the subsequent cover-up of constitutional violations. He is sued in his individual capacity. Cain's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord. Cain acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

11. Defendant Tom Parodi at all times relevant herein was a Detective with the Concord Police Department. Parodi was one of the individuals responsible for supervising the illegal cover-up operation of the intentional killing of Charles Burns and illegal detention and arrest of plaintiff Bobby Lawrence. He is sued in his individual capacity. Parodi's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Parodi acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord.

12. Lt. David Hughes (hereinafter referred to as the City of Concord Point Man) at all times relevant herein was a Lieutenant with the Concord Police Department. He is sued in his individual capacity. Hughes' conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Smith acted in a

supervisory capacity on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

13. Defendants, DOES 2 through 20 are Concord Police Officers, were at all times relevant to this Complaint duly appointed and acting officers of the police department of the City of Concord.  They are sued in their individual and official capacities.  Each of them was acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of California and/or City of Concord;

14. Defendants, DOES 21-25 are non-sworn employees of the City of Concord, are sued in their individual and official capacities; and at all times relevant were employees, agents or otherwise acting on behalf of the City of Concord and were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of California and/or City of Concord;

15. Defendant, Guy Swanger, is the Chief of Police for the City of Concord and is sued in his individual capacity. Chief Swanger acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

16. Defendant Matthew Switzer, identified herein as "K-9 Officer" was at all times employed by the City of Concord along with his K-9 "Figo". At the time of the shooting in this case Switzer was engaged in illegal and unlawful conduct, and substance abuse for which he was at that time or soon thereafter under investigation by the Concord Police Department,

yet despite knowledge of his illegal tendencies and substance abuse was permitted to perform his duties as the K-9 officer. Switzer's K9 "Figo" was known to be uncontrollable and capable of excessive force and uncontrollable behaviors; Switzer is being sued in his individual capacity; Switzer's conduct as alleged in this complaint occurred during performance of his duties as an employee of the City of Concord.  Switzer acted on behalf of the City of Concord, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Concord;

17. Defendant Insp. John Conaty is an employee of the County of Contra Costa, District Attorney's Office. Conaty was one of the individuals responsible for supervising the illegal cover-up operation of the intentional killing of Charles Burns, and the illegal detention of plaintiff Bobby Lawrence. Conaty is sued in his individual capacity. Conaty acted on behalf of the County of Contra Costa, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and Contra Costa County;

18. Defendant, Barry Grove is an employee of the County of Contra Costa, District Attorney's Office. (Referred to herein as "The District Attorney Point Man") Grove was one of the individuals responsible for supervising the illegal cover-up operation of the intentional killing of Charles Burns and illegal detention and arrest of Bobby Lawrence. Grove is sued in his individual capacity. Grove acted on behalf of the County of Contra Costa, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the

State of California, and Contra Costa County; at all times herein mentioned, Grove was acting consistent with a "police officer" function of investigation as opposed to his prosecutorial function.

19. Defendant, Kevin Bell is an employee of the County of Contra Costa, District Attorney's Office. Bell personally participated in the planning and shooting of the deceased Charles Burns, along and in concert with the Concord Police Officers. Bell is sued in his individual and capacities. Bell acted on behalf of County of Contra Costa, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and Contra Costa County; at all times herein mentioned, Bell was acting consistent with a "police officer" function of investigation as opposed to his prosecutorial function.

20. Investigators and other employees of the Contra Costa District Attorney's Office were at all times employed by the County of Contra Costa. The representatives of the Contra Costa County District Attorney's Office are sued herein as Does 26-40; At all times mentioned herein, the representatives of the Contra Costa District Attorney's Office were acting in an investigative capacity and were implementing internal policies and procedures of the investigative function of the District Attorney's Office consistent with their training. The subject policies and procedures purpose is facilitation of local police agencies control of investigations related to police misconduct within their agency, facilitating their efforts to conceal their officer's misconduct. All representatives of the District Attorney's Office were acting under color of law;

21. The City of Concord is a municipal corporation and the public employer of each of the defendants, City of Concord Police Officers and unsworn employees;

22. The County of Contra Costa is a public employer of each of the defendants, District Attorney's Office personnel;

23. This City of Antioch is a municipal corporation and the public employer of each of the defendants, Antioch Police Officers and unsworn employees;

24. Defendant James Stenger is an officer with the City of Antioch. Stenger was personally involved with the conduct alleged herein as to Plaintiff Bobby Lawrence and the illegal cover-up operation of the intentional killing of Charles Burns.  He is sued in his official and individual capacities. Stenger acted on behalf of the City of Antioch, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Antioch;

25. Defendant Anthony Morefield is a Sgt. with the City of Antioch. (hereinafter referred to as the Antioch Point Man) Morefield was one of the 3 individuals responsible for supervising the illegal cover-up operation of the intentional killing of Charles Burns.  He is sued in his individual capacity. Morefield acted on behalf of the City of Antioch, individually and in concert with other defendants named and unnamed herein; and under color of law, to wit the statutes, ordinances, regulations, policies, customs and usages of the State of California, and City of Antioch;

26. At all times relevant herein, all defendants were acting in concert and conspired with one another and were jointly and severally liable for the injuries to plaintiffs herein;

27. Does 42-60 at all times relevant herein are the employees, agents or representatives of the defendants named herein and the City of Antioch.  Does 42-60 at all times were acting in

the course and scope of that employment or agency and were authorized to act on behalf of the other defendants; All such defendants were at all times acting under the color of law.

28. At all times relevant herein, all defendants were acting as agents of the other defendants, authorized to act thereby and were acting within the course and scope of said agency.

29. Hereinafter "All Defendants" will refer to all defendants named in Paragraphs 9-28 of this complaint.

30. There are three groups of defendants for the purpose of understanding the course of events and claims made herein.  First, hereinafter "Concord Officer Defendants" will refer to Concord Police Department Defendants Detective Chris Loercher, Francisco Ramirez, Officer Mike Hansen, Officer Steven White, Officer Brad Giacobazzi, Officer Danny Smith, Officer Eduardo Montero, Officer Steven Price, Officer Jason Passama, Officer Paul Miovas, Officer Matt Cain and Officer Matthew Switzer. The Concord Officer Defendants were directly involved in the planning, and carrying out of the excessive force on Burns and Lawrence, the arrest of Lawrence and the killing of Burns.  Second, the Three Point Men will refer to Barry Grove of Contra Costa County, Lt. David Hughes of the City of Concord, and Sgt. Anthony Morefield of the City of Antioch.  The Three Point Men were assigned by each of the named entities to act in a managerial and policy making position relative to the so-called "LEIFL" protocol.  The Three Point Men are the highest level of authority relative to carrying out the investigation of the events depicted in this case, and were acting as the representative of the subject entities in the place and stead of the respective chief's of police. They were responsible for the manner and intent of the investigation, its purposeful acts, omissions and neglect.  For the purposes of this complaint, at this time The Three Point Men were directly involved in the decision to arrest

Bobby Lawrence, in the decision to detain him at Antioch for questioning, in the decision to detain him for many hours with the intent of eliciting a statement from him to support their fabrication of the reports related to the haphazard and illegal execution of the warrant, the ensuing vehicular assault, the detention, arrest and detainment of Lawrence and the shooting death of Charles Burns.  Throughout the course of events they were informed by Team 1 (see below) as to the statements being elicited from Lawrence and were informing Team 1 what information they would need to elicit from Lawrence based on their theory of protecting the Concord Police Officers for their constitutional violations against Lawrence and Burns.  The Three Point Man directly ordered that Lawrence be incarcerated in County Jail, despite their knowledge that he had not committed a crime and despite their knowledge that the Concord Police Officers illegally detained Lawrence and used excessive force against Lawrence.  The third group of defendants is the "Team 1 Investigators."  The defendants that fall in this category are John Conaty of Contra Costa County, Tom Parodi, City of Concord and James Stenger, City of Antioch.  Team 1 was responsible for facilitating the fabrication of the statements of the two admitted shooters Ramirez and Loercher; and for the interrogation, prolonged detention and incarceration of Bobby Lawrence all while being directly supervised and informing the Three Point Men. The remaining defendants are the City of Concord, the Concord Police Chief for his direct role and ratification of the conduct of his officers and Kevin Bell who is employed by Contra Costa County but in this case was acting in concert with the Concord Officer Defendants as alleged herein.

## IV. GENERAL ALLEGATIONS

31. At the time of drafting this amended complaint the Concord Police Department, and their representatives have and continue to act in a "shroud of secrecy" and pursuant to a "code of silence" in concert with the Antioch Police Department and the Contra Costa District Attorney's Office and their representatives with regard to the specific individuals involved and their specific roles in the seizure and killing alleged in this complaint. While defendants have provided some discovery, additional discovery remains outstanding and Plaintiff's investigation is continuing. As such, the plaintiffs have identified certain persons as Doe Defendants and will amend the complaint at such time as the information is made available to the plaintiffs or public. Because defendants continue to withhold information related to the subject investigation Plaintiffs will amend the complaint as required as additional information is disclosed. Defendants conduct in fabricating reports and concealing information has effectively hindered Plaintiffs access to the courts.

32. On May 10, 2013 defendant Concord Police Officers committed a heinous act of intentionally and maliciously killing Charles Burns;

33. On that date and time Officers from the Concord Police Department SIB and SET units (Concord Police Officers), along with Kevin Bell, a representative of the Contra Costa District Attorney's Office, within the city limits of Antioch, planned a surveillance and undercover operation with the intent of arresting and harming Charles Burns. Charles Burns and Bobby Lawrence had exited Charles place of residence headed to Wal-Mart to purchase a stereo harness and a Mother's Day card. They entered Lawrence's vehicle and then inexplicably an unmarked vehicle driven by undercover Concord Police Officer Smith drove toward their vehicle to block its movement, and in a threatening manner including

pointing a firearm at Lawrence and Burns. Due to the fact that the officer was undercover and was driving an undercover, unmarked vehicle and drove towards Lawrence's vehicle without identification or warning, Lawrence attempted to drive down the street to safety. Lawrence had no information that the subject vehicle was driven by a police officer. Nor did the officer take any action to identify him self as a police officer. As Lawrence drove down the street towards his perceived direction of safety another undercover and unmarked vehicle, driven by an undercover officer rammed his vehicle; Lawrence then after being rammed by a vehicle driven by another unknown assailant attempted to avoid the vehicle and tried to continue down the path towards safety; when his vehicle was then rammed by another unmarked vehicle driven by undercover police officer Giacobazzi; Lawrence then continued trying to escape this onslaught of unknown assailants. As Lawrence rounded Barcelona Circle, in Antioch, CA, the street on which he was traveling, one of the unmarked vehicles driven by Concord Police Department undercover officer Smith continued to ram him from the rear. At no time did any of the undercover officers take any action whatsoever to identify themselves or indicate in any way that the vehicles they were driving or they themselves were associated in any way with a police agency. It was not until Lawrence reached the stop sign at the end of the circle that, for the first time, there was any indication that the assailants were the police. Immediately upon learning the assailants were the police, Lawrence stopped the vehicle, which was then rammed again by undercover officer Smith driving the vehicle behind Lawrence's. Lawrence held his hands up and outside the driver's side window in plain view of the officers. Burns, the passenger exited the vehicle out of the passenger side door and jogged slowly approximately 20 feet to the middle of the road where he then stopped at the direction of the police. Burns was

not armed and carried no weapon or anything that could be construed as a weapon. Burns

took no aggressive action but rather yielded to the officers and cowered his shoulders, with

his "hands-up". Three officers from the Concord Police Department SIB unit lined up in

firing squad fashion. The three officers were flanked by two additional SIB Officers

(Loercher and Ramirez). Multiple officers unloaded their weapons on the defenseless

Burns with full intent to execute him. Thus far only officers Loercher and the Ramirez

admitted to shooting Burns however evidence points to additional officer's involved

directly in shooting Mr. Burns.  The Concord Police Department SIB unit members

continued to shoot Burns despite the fact that he was laying lifeless or near lifeless on the

ground including shooting a bullet through the top of his skull and through his brain.

Another Concord Police Officer (K-9 officer Switzer) then, released a Concord Police K-9

(Figo) for the purpose of further maiming Burn's body as he lay in a pool of his own blood

brought on by the onslaught. The dog initially went after the police based recognizing their

aggression towards the defenseless Burns, he was then re-directed.  No effort was made to

stop the dog from attacking Burns and as his limbs flailed from the dogs attack the officers

stood by and watched. Ultimately the dog's handler came and pulled the dog away.  One of

the Concord Police Officers then walked forward and stood over Burns' lifeless body as he

lay in the pool of his own blood, full of bullet holes, maimed by the police dog and fired an

additional two rounds into Burns body out of pure malice and spite.  At no time did the

Concord Police Officers consider or employ any means of addressing the situation with

force short of lethal force, despite the fact that no force, let alone lethal force was necessary

nor warranted under the circumstances since Burns had succumbed to the authority of the

police and at no time presented a threat to them. The officers did in fact carry out what they had intended or desired, infliction of lethal force upon plaintiff Charles Burns killing him;

34. The officers in this case intentionally created an artificial situation of peril when the perceived danger did not actually exist. They engaged in a hapless execution of a search warrant and by their reckless conduct, exacerbated the situation by using excessive force against Burns and Lawrence and ultimately lethal force against Burns when there was no legal basis, nor practical requirement for use of such force. However, they had planned for the use of lethal force and were ready, willing and able to carry out such force upon contact with Charles Burns as a result now deceased.

35. Kevin Bell was personally present at the shooting of Burns, as he was actively involved in the planning and implementation of the operation. Bell met with and conferred with Hansen two weeks prior to the subject incident and then again the day prior to and the day of the execution of Burns.  Despite knowledge that Burns was not a gang member sought to assist Hansen in fabricating a claim that Burns was a gang member in order to justify an escalated police presence and use of force in service of a warrant on Burns.

36. Bell was just a matter of several feet away when Burns was executed.

37. Neither Bell, nor any Concord Police Officer took any action whatsoever to stop, intervene, call out, take control or take any other action to prevent the killing of Charles Burns. Neither Bell nor any Concord Police Officer took any action whatsoever to aid Charles Burns by providing medical care, or contacting medical care, rather they all stood by and participated as the other defendants present continued to shoot the helpless Burns. As he lay on the ground, stood by and watched as Officer Switzer deployed police dog, "Figo"; and watched as the dog attacked Burns defenseless body. After "Figo" was

retrieved the Concord Police Officers and Bell stood by and watched, failed to take any action, to call out, take control, or any other action to prevent a Concord SIB or SET officer from approaching Burns defenseless body and standing over Burns shooting him 2 more times out of pure malice.

38. At any point in time during the course of the events leading to Burns death, Bell and any Concord Police Officer could have intervened, stepped forward, spoken up, taken control, aided Burns or any other act which they omitted to perform that would have led to preventing further harm, injury, suffering or death.

39. While the acts described above were occurring, Lawrence was pulled out of his vehicle by Concord Police Officers forced to the ground at gunpoint then physically and verbally threatened, dragged across the street and shoved into a fence where he was held down, roughed up and ridiculed despite providing no resistance. Amongst the intent of handling Lawrence in this manner was an effort to interfere with his ability to witness the illegal events being undertaken by their fellow Concord Police Officers killing Charles Burns.

40. Lawrence was arrested without cause or legal justification. Lawrence was then taken to the Antioch police station where "Team 1" held him without legal justification and against his will and subjected him to aggressive and unwarranted harassment in an effort to elicit false, misleading information from him. Lawrence was blamed for the death of his friend, was screamed at, yelled at, and intimidated by "Team 1".  Each of the members of Team 1 were personally involved with the ongoing detention and interrogation of Lawrence. At any point in time during the continued illegal detention of Lawrence, Parodi, Stenger, and Conaty, anyone of them could have intervened, taken control, stopped or prevented Lawrence's detention from being purposely and illegally prolonged.  All members of Team

1 were made personally aware over the period of several hours of the facts and circumstances leading to Burn's illegal death and the illegal detention and arrest of Lawrence. Each member of Team 1 were made personally aware that Lawrence was being unlawfully detained throughout this period of time and were all made personally aware that there was no legal justification for continuing to detain Lawrence at the Antioch Police Station. Each member of Team 1 were all made personally aware that there was no probable cause to arrest Lawrence and that there was no probable cause to continue to detain Lawrence and make him post bail. Parodi, Stenger, and Conaty were all trained in legal validity of detention, prolonged detention, arrest, probable cause and related procedures. Despite their training and personal knowledge of the information regarding the illegality of Lawrence's initial detention, prolonged detention and arrest, Team 1 all stood by and acted with one another to deprive Lawrence of his rights as a citizen under the United States Constitution. They knowingly engaged in this conduct with the purpose and intent of intimidating Lawrence, a young man under 20 years old, into providing a statement that would conceal the true unlawful and heinous conduct of their fellow law enforcement personnel, and cast blame on Lawrence and Burns. Lawrence was imprisoned based on a fabrication and in furtherance of these defendants and the other defendants' joint plan to cover-up the illegal use of force against Lawrence and the illegal use of lethal force against Burns.  While Team 1 acted on their own they also acted in concert with others. Particularly they each conferred with the Three Point Men, who were ultimately responsible for directing all activity related to the investigation, including the decision to treat Lawrence as alleged herein. Even after Lawrence, despite being held illegally, nonetheless tried to cooperate with the defendants, not realizing the manner in which he

was being used to further their unlawful motives related to Burns and himself; Lawrence was subjected to an unlawful and disturbing interrogation and despite full cooperation and lack of legal cause, the Three Point Men acting in concert as a management level team made the decision to take Lawrence to county jail without just cause, as opposed to releasing him from custody in Antioch. Stenger carried out the plan by preparing a probable cause declaration fraught with material omissions and misrepresentations.

41. Team 1 created an audio recording of the subject interview using a digital recording device. They each then proceeded to manipulate the recording during the course of the investigation, as well as not recording portions of the interview.  By doing so they fabricated a statement that contains information out of context in order to produce a statement that would attempt to justify the conduct of the offending officers. They then produced a falsified written investigative report in order to cover-up the illegal conduct of their fellow law "enforcement" personnel.

42. The officers at the Antioch Police Department along with the Concord Police Officers and the Contra Costa County District Attorneys office then undertook to fabricate information related to the shooting to protect the officers involved and to conceal their illegal conduct. The Officers did not follow proper and reasonable police practices in obtaining statements and preserving evidence related to the shooting. In fact the officers from both agencies and the representatives of the District Attorney's Office purposely did not obtain nor preserve surveillance and officer obtained video; did not videotape nor record all interviews in order to conceal the truth and to conceal their illegal tactics in eliciting information. In reality the purpose of the investigation was to determine what obstacles to their fabrication of events

may exist as opposed to a determination of whether the Concord Police Officers had acted in violation of Lawrence's and Burns' constitutional rights.

43. While the officers from the Concord Police Department were principally involved in the actual shooting of Mr. Burns and the initial detention of Mr. Lawrence, representatives from the Antioch Police Department and the Contra Costa District Attorneys office were involved with the investigation and illegal prolonged detention of Lawrence, the Lawrence arrest, and actively participated in the cover-up of the illegal conduct including the illegal use of force, prolonged detention and arrest of Lawrence and illegal use of lethal force as to Burns. At all times officers from each agency and the district attorney's office engaged in the unlawful conduct described herein personally and at other times stood by and watched and did not intervene despite a duty to intervene and protect the constitutional rights violated as described herein;

44. While Lawrence was taken away and interrogated, several Concord Police Officers acted in concert with the Antioch Police Department, the Contra Costa County District Attorneys Office and the Contra Costa County Sheriff's Criminalist Division to secure the scene and Charles Burns' body in an effort to conceal their unlawful and malicious conduct;

45. No effort was ever made by any law enforcement representative to provide emergency aid to Burns or contact any third party emergency aid provider at a time when medical aid could have been provided before death. Rather than seek medical aid the officers sought to make sure Mr. Burns was dead by deploying the police dog and then finishing him off with two additional shots at close range. Rather than save Mr. Burns once he was incapacitated, the officers intentionally caused him to suffer greatly prior to his death. The officers then stood around and laughed and joked while Burns body lie open to the public for several

hours just feet away. Shortly after the killing, DDA Barry Grove, the representative of the District Attorney's office (the District Attorney Point Man) showed up on scene and along with Sgt. Anthony Morefield (the City of Antioch Point Man) and Lt. David Hughes (The City of Concord Point Man) directed the operation to cover up the illegal conduct of the Concord Police Officers and the resulting violations of the constitutional rights of Charles Burns and Bobby Lawrence.

46. The Three Point Men were assigned the highest level of authority by their respective Police Department Chiefs relative to the roles under the LEIFL protocol. The Three Point Men were assigned to effectuate the policy of their respective departments relative to this particular protocol and acted in the place and stead of the Chiefs for this purpose. The Three Point Men were given authority to jointly make all decisions relative to the manner of the investigation, and used that authority to coordinate a concerted effort to illegally keep Lawrence in custody, use him as a pawn for their scheme to cover up the defendants constitutional violations, send him to jail base on falsified information and cause him to post an expensive bail in order to be released from custody.

47. During the operation and shortly after the shooting, one by one the SIB and SET officers entered and exited a vehicle at the scene of the shooting and the groundwork was laid for fabricating the story for public consumption and concealing the truth regarding the killing of Charles Burns by getting their story straight.

48. Defendants Team 1 acting in concert with one another under the direction of Three Point Men and with the other unnamed officers herein, placed Ramirez and Loercher in the comfort and solace of hotel rooms and ensured they were represented by legal counsel. All the while they attempted to gather information known to Lawrence and other witnesses and

then sought to fabricate the events of the evening by way of forceful and inappropriate

interrogation of Plaintiff Lawrence, and manipulation of his statement. All along they were

coaching the officers to provide statements consistent with a theory exculpating the officers

from their willful killing of Charles Burns. Team 1 along with the Three Point Men

provided the officers information to help shape their statements and then conducted only

audio recordings and purposely avoided video recordings of the statements in a manner to

optimize the opportunity to fabricate their version of events;

49. At no time since the death of Charles Burns at the hands of the Concord Police Department

has any defendant sought to gain information inculpating the officers in wrongful conduct,

searching for the truth or exposing the truth. In fact, inexplicitly, the investigation was

conducted as a homicide investigation with the "suspect" being the deceased Charles

Burns. Bobby Lawrence was treated as a suspect in a PC 245 (a) assault with a deadly

weapon investigation; and the involved officers were treated and characterized as

"victims";

50. Moreover, despite obvious inconsistencies between the physical evidence and the involved

officer's statements no action was ever taken by any law enforcement agency or the district

attorney's office to hold the Concord Police Officers responsible for their illegal conduct.

51. A "shroud of secrecy" and "code of silence" ensued and to a large extent has continued up

until the time of the drafting of this amended complaint. The Concord Police Officers and

Antioch Police Officers and Contra Costa County took at least 6 months to carry out the

coordinated effort to prepare their reports, and did so as a concerted action under the

direction of representatives from the Contra Costa District Attorney's Office. The product

of the defendants' concerted concealment efforts is a cover-up of the heinous acts of the

Concord Police Officers on May 10, 2013 in the slaying of Charles Burns and the use of illegal force against Bobby Lawrence, including also his illegal detention, arrest and false imprisonment.

52. This concerted effort was facilitated by the existence of a County Wide law enforcement policy called the "LEIFI Protocol" (hereinafter "Protocol");

53. The "Protocol" has been represented as being conceived as a means for deploying multiple law enforcement agencies and resources to conduct a swift, efficient and transparent investigation involving police officer misconduct. However in reality the "Protocol" was created with the purpose of providing the law enforcement community in Contra Costa County with a powerful tool for covering up police misconduct. The supervisors in the law enforcement community, including Chief Swanger, Chief Contando and District Attorney Peterson have adopted and continue to employ the "Protocol" knowing that it would serve as a means for their subordinates to work together to conceal police misconduct and despite being aware that the "Protocol" has continually been used in such a manner. Swanger, Contando and Peterson were likewise aware that the "Protocol" was in fact being used in the same illegal manner in this case and despite this knowledge allowed the abusive and illegal conduct to occur.  The "Protocol" is a façade. The protocol is intended to give the appearance of propriety by having several agencies involved in an investigation on what is supposed to appear as a checks and balances between the various agencies.  However in reality the "Protocol" is utilized in Contra Costa County as a means for establishing a conspiratorial and concerted effort by law enforcement agencies to protect one another when officers unlawfully harm and kill citizens. This policy is consistent with a long standing practice by law enforcement agencies in Contra Costa County with the support of

the District Attorney's Office of engaging in unconstitutional conduct permeating their activities under the disposition that the "Ends Justifies the Means".  The District Attorney's Office through at least the efforts of Conaty and Grove helped to facilitate the cover-up of the Concord Police Officer's misconduct in this case, and ignored requests by Plaintiffs to turn the investigation over to an independent law enforcement agency;

54. Within days after the killing, based on the defendants releasing false information to the public regarding the events and after seeing law enforcement engage in a campaign to impugn the character of Burns and Lawrence as opposed to engaging in a objective investigation, Plaintiffs requested the District Attorney's Office and the Concord Police Department turn this investigation over to a neutral third party based on the obvious conflicts for each of these agencies. The efforts of Plaintiffs to have the defendants take the correct course of action and refer the matter to an outside agency were met with resistance, and submitted a letter to the press, which was published and which made it clear that the tact of the investigation was going to be to conceal the wrongdoing of the investigative agencies and impugn the character of Lawrence and Burns.  Having knowledge that involving a neutral third party investigative agency would expose the misconduct by the officers, the Concord Police Department and District Attorney's Office continued their concerted effort to conceal the misconduct with the assistance of the Antioch Police Department under the guise of the "Protocol";

55. At all times herein the defendants acted with reckless and deliberate indifference to the constitutional rights of Plaintiffs;

56.  Plaintiffs timely served a California Tort Claims on the City of Concord, City of Antioch, and County of Contra Costa. The City of Concord and Contra Costa County denied the

claims and the City of Antioch denied the claim by operation of law by not denying or granting the claim within 150 days of being served with the claim.  The California Tort Actions filed in this complaint are done so timely relative to the California Tort Claims Act;

## V.  DAMAGES

57. Plaintiffs have incurred and will continue to incur substantial attorney's fees and costs associated with prosecuting these lawful claims pursuant to 42 USC 1983, and 1988;

58. As a result of Defendants' violation of Plaintiffs' federal civil rights under 42 USC 1983, and the Fourteenth Amendment to the U.S. Constitution, Plaintiffs have been mentally and emotionally damaged, including but not limited to loss of familial relations, decedents society, comfort, protection, companionship, love, affection, solace and moral support; and for other compensatory damages, economic and non-economic as provided by law;

59. Plaintiff, Burns' are entitled to recover wrongful death damages pursuant to CCP section 377.60 and 377.61 and California Probate Code section 6402(b);

60. Plaintiff, Estate of Charles Burns, by and through Tammie Burns, Personal Representative of the Estate of Charles Burns, is entitled to recover damages pursuant to his right of survivorship for the pain and suffering he endured as a result of the violation of his civil rights.

61. Plaintiff, Bobbie Lawrence is entitled to recover damages for pain, mental suffering, humiliation, duress, out of pocket loss and other compensatory damages economic and non-economic damages according to proof;

62. Plaintiffs are entitled to punitive and exemplary damages for violation of civil rights and other claims, according to proof.

## VI.  FIRST CAUSE OF ACTION
### 42 U.S.C. 1983 AGAINST "Concord Officer Defendants"

### AS TO Plaintiff ESTATE OF CHARLES BURNS by TAMMY BURNS, SUCCESSOR IN INTEREST to the Estate of Charles Burns

63. Paragraphs 1 through 62 are incorporated herein by reference as though fully set forth herein;

64. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. 1983 against the above-mentioned defendants for violation of his constitutional rights under color of law.

    a.   The above-mentioned Defendants, the "Concord Officer Defendants", committed an unlawful seizure and used excessive force through lethal force in violation of the 4th amendment of the U.S. Constitution;

    b.   The Defendants were deliberately indifferent to provision of emergency medical care to decedent in violation of the 14th amendment to the U.S. Constitution.

65. As a direct result of Defendants' actions, Plaintiff suffered substantial mental suffering, humiliation, and loss of life.  Plaintiff's damages include economic and non-economic damages. The conduct of defendants was reckless, malicious and deliberately in violation of plaintiffs constitutional rights;

66. Wherefore plaintiffs pray as hereinafter specified;

## VII.    SECOND CAUSE OF ACTION
### Conspiracy To Violate Civil Rights—42 U.S.C. 1983 AGAINST "Concord Officer Defendants" and Kevin Bell

### AS TO Plaintiff Estate of Charles Burns by Tammy Burns, Successor in Interest to the Estate of Charles Burns

67. Paragraphs 1 through 66 are incorporated herein by reference as though fully set forth herein;

68. Defendants, "Concord Officer Defendants," and Bell in this cause of action conspired to violate Plaintiff's civil rights as follows:

  a. The above-mentioned Defendants conspired to commit an unlawful seizure and used excessive force through lethal force in violation of the 4th amendment of the U.S. Constitution;

  b. The Defendants conspired to deprive provision of emergency medical care to decedent in violation of the 14th amendment to the U.S. Constitution.

  c. Within days prior to the killing of Charles Burns, the Defendants met on more than one occasion and planned the take down of Burns which planning included use of lethal force when faced with any level of hesitation on the part of Burns.  The Defendants sought to justify their conduct by trumping up the level of sophistication and criminality of the conduct of Burns leading to attaining a warrant for his arrest. The falsified information contained in the warrant and the intent to take Burns down was just a further act in carrying out threats made by law enforcement to Burns and his family regarding Burns.  The defendants sought the assistance of Bell due to his assignment at the Contra Costa District Attorney's Office in gathering information to assign a falsely high and falsely dangerous level of criminality and risk associated with Charles Burns.  Criminal acts, which were not in fact attributable to Burns, were none-the-less attributed to him in order to justify the intended conduct.  Ties to a non-existent gang were alleged despite the fact that no such gang existed and that Burns was not in any gang were made in order to justify the Defendants' intended conduct. Bell assisted in obtaining this information through his resources with other law

enforcement agencies and the District Attorney's office and facilitated the plan and operation to take Burns down.

d.  The tactics utilized in this case were not the straightforward product of good police practices, but rather were falsely conceived with the intent to justify the use of excessive force up to and including lethal force against Charles Burns, when such use would not otherwise be necessary nor required in order to arrest Mr. Burns.

e.  The reality is Burns' only convictions were for DUI and Petty Theft and no evidence existed that he had ever engaged in nor had any propensity whatsoever to engage in violent conduct, and certainly not in any reasonable way that could justify the level of force intended upon him that day. Defendants had this information before May 10, 2013 yet twisted and fabricated the information in order to engage in the operation on that date as described above.

f.  Immediately prior to initiating the take down of Burns, the defendants secured the streets surrounding Burns home so that there would be no witnesses to their acts.

g.  The Defendants plan included secrecy and failure of identification which the defendants knew would likely trigger hesitation on the part of Burns which they would use to justify their use of excessive and ultimately lethal force.

h.  After the take down had begun, the defendants engaged in conduct that was intended to provide a response that would justify their use of excessive and ultimately lethal force. They repeatedly rammed the vehicle in which he was a passenger without any identification of their vehicles or themselves. Prior to the takedown, the defendants had knowledge of who the vehicle was registered to, Bobby Lawrence, a young man with no criminal history whatsoever. They saw Burns and Lawrence get into

Lawrence's vehicle. They saw that Burns and Lawrence presented no threat. They had no information whatsoever that Lawrence presented any risk or propensity for violence, yet they rammed his vehicle several times, with subsequent crashes occurring with the knowledge of the other Officers, all the while no effort being made to identify themselves or their vehicles as police vehicles.

i.  When Lawrence approached the stop sign at the intersection of Buchanan and Barcelona Circle there were indications that the police were involved.  As such he immediately stopped his vehicle and put his hands out of the window, submitting to the officers. At that time Burns alighted from the vehicle and jogged approximately 20 feet before he then submitted to the officers. Burns was surrounded and Concord Police Officers with guns drawn, knowing what was about to occur Concord Police Offices grabbed Lawrence from his vehicle and dragged him across the street and held him down in an attempt to impede his ability to witness the impending death of Burns and to facilitate the cover up of their unjustified use of lethal force.

j.  After Burns was initially shot and lay on the ground defenseless, and after the dog was deployed to attack his defenseless body. A Concord Police Officer under the watch of the other Concord Police Officers approached Burns and shot him at point blank range with the intent of further covering up the use of excessive force by killing him so that he would not be available to describe what had occurred and allowing them to initiate other acts to cover-up the death such as the fabrication of their story with the assistance of the District Attorney's Office, planting of evidence on his person to provide an explanation for their false statement that he placed his hand in his waist line. The defendants immediately secured the scene to keep all witnesses

away, delayed calling in any emergency medical providers, and generally engaged in

a number of acts described herein and others intended for the purpose of covering up

the unlawful killing of Burns.

69. In addition the named Defendants were at all times in a position to prevent the violation of

Plaintiff's civil rights from occurring but failed to take any action to do so, despite their

duty to protect citizens;

70. As a result of acts in furtherance of the object of the conspiracy, Plaintiffs suffered

deprivation of his rights and suffered physical and emotional damages as aforesaid;

71. As a direct result of the conspiratorial acts, Plaintiff suffered substantial mental suffering,

humiliation and loss of life. Plaintiff's damages include economic and non-economic

damages. The conduct of the defendants was reckless, malicious and deliberately in

violation of Plaintiff's constitutional rights;

72. Wherefore Plaintiff prays as hereinafter specified;

### VIII.   THIRD CAUSE OF ACTION
### 42 U.S.C. 1983 AGAINST All Defendants Sued in Their Individual Capacities
### AS TO Plaintiff Bobby Lawrence
### (Excluding Bell, City of Concord)

73. Paragraphs 1 through 72 are incorporated herein by reference as though fully set forth

herein;

74.  Plaintiff Bobby Lawrence claims damages for the injuries set forth above under 42 U.S.C.

1983 against all Defendants for violation of his constitutional rights under color of law.

Defendants violated Mr. Lawrence's 4th amendment rights by means of excessive force,

illegal detention, prolonged unjustified detention, unlawful arrest, and false imprisonment;

75. During the time Mr. Lawrence was illegally detained the case was of such a high profile

nature that Allan Contando, Chief of Antioch Police Department, Guy Swanger, Chief of

Concord Police Department and Mark Peterson, District Attorney Contra Costa County were all notified regarding the killing of Charles Burns. Swanger was made aware of the concerted effort being undertaken by employees of the respective departments to fabricate and conceal the true facts leading to Burns' death. Swanger was made aware of the fact that Lawrence had been illegally detained, was continuing to be illegally detained, was illegally arrested and falsely imprisoned in that he was not to be released from custody without posting substantial bail. Despite his knowledge, Swanger took no action to intervene or to prevent further unconstitutional violations as to Lawrence, and in fact by his in-action and direction facilitated the unjustified detention and arrest of Lawrence;

76. Mr. Lawrence has suffered substantial mental suffering, mental anguish and humiliation. Plaintiff's damages include economic and non-economic damages.  The conduct of defendants was reckless, malicious and deliberately in violation of Plaintiff's constitutional rights;

77. Whereas Plaintiffs pray as hereinafter specified;

## IX.  FOURTH CAUSE OF ACTION
### 42 U.S.C. 1983 AGAINST "Concord Officer Defendants" and Bell
### AS TO Plaintiffs John Burns and Tammy Burns

78. Paragraphs 1 through 77 are incorporated herein by reference as though fully set forth herein;

79. Plaintiffs John Burns and Tammy Burns claim damages for the injuries stated above under 42 U.S.C. 1983 against Defendants for violations of their constitutional rights under color of law. Defendants, "Concord Officer Defendants," and Bell have deprived Plaintiffs of their right to familial association with their son, decedent Charles Burns, in violation of the

14th amendment of the U.S. Constitution by conspiring to kill, assisting with the killing of, and the killing of Charles Burns in the manner stated in Paragraphs 1-76 above;

80. Plaintiffs have suffered substantial mental suffering, humiliation, and loss of life. Plaintiffs' damages include economic and non-economic damages. The conduct of defendants was reckless, malicious and deliberately in violation of plaintiffs constitutional rights;

81. Wherefore Plaintiffs pray as hereinafter specified;

### X.  FIFTH CAUSE OF ACTION
### 42 U.S.C. 1983 AGAINST Defendant City of Concord
### (MONELL)

### AS TO All Plaintiffs

82. Paragraphs 1 through 81 are incorporated herein by reference as though fully set forth herein;

83. Prior to and including May 10, 2013 the City of Concord developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in contact with Concord Police Officers, which caused violation of Plaintiffs' rights;

84. Amongst others, Chief Swanger  authorized, directed, and ratified the actions of the Individual defendant Officers;

85. Chief Swanger is a policy maker for the City of Concord;  moreover the conduct by the Concord Police Officers was further ratified by a policymaking review board within the City;

86. Chief Swanger was notified about the killing of Burns shortly after the shooting.  Chief Swanger was aware of the ongoing efforts to fabricate the evidence related to the shooting of Burns, False Imprisonment/Arrest of Lawrence and unlawful use of force;

87. It was the policy and/or custom of the City of Concord to inadequately supervise and train its police officers, including the defendant Officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City of Concord did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct involving excessive force and false arrest;

88. The City of Concord did not require appropriate in-service training of officers on issues of use of force, use of lethal force, arrest procedures, execution of warrants, and other related duties;

89. The City of Concord had prior knowledge of the propensity of the Individual Officers in this case to engage in unlawful acts in violation of persons constitutional rights and yet continued to employ them in such capacity that they were able to engage in the alleged conduct unfettered by lawful limitations that should have be placed upon them;

90. In the City of Concord officers engaged in undercover work as part of the Special Investigations Bureau are given free reign to engage in unconstitutional conduct which is tolerated and authorized within the department;

91. As a result of the above described policies and customs, police officers of the City of Concord, including defendant Officers, believed that their actions would not be properly monitored by supervisory officers and their misconduct would not be investigated or sanctioned, but would rather be tolerated;

92. The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the City of Concord, including but no limited to Chief Swanger, to the constitutional rights of persons contacted by the Concord Police Department, and were the cause of the violations of Plaintiffs' rights alleged herein;

93. As a result of the conduct, Plaintiffs suffered deprivation of their rights and suffered physical and emotional damages as aforesaid;

94. Plaintiffs have suffered substantial mental suffering, humiliation and loss of life and loss of companionship. Plaintiffs' damages include economic and non-economic damages. The conduct of defendants was reckless, malicious and deliberately in violation of plaintiffs constitutional rights;

95. Wherefore Plaintiffs pray as hereinafter specified;

## XI.  SIXTH CAUSE OF ACTION
### BATTERY AGAINST "Concord Officer Defendants"

**AS TO Plaintiff Estate of Charles Burns Tammy Burns, Personal Representative of the Estate of Charles Burns**

96. The Plaintiffs hereby incorporate paragraphs 1 through 95 as if set forth fully herein;

97. The Defendants, "Concord Officer Defendants" intentionally engaged in a harmful and offensive touching of Plaintiff, decedent Charles Burns;

98. The touching which occurred was non-consensual;

99. The touching resulted in substantial physical and emotional injuries to the decedent;

100. Plaintiff suffered substantial mental suffering, humiliation, and loss of life.  Plaintiff's damages include economic and non-economic damages.  The conduct of defendants was reckless, malicious and deliberate and justifies an award of punitive and exemplary damages;

## XII.    PRAYER FOR RELIEF

**WHEREFORE, the Plaintiff requests they be awarded damages as follows:**

1. As to the Estate of Charles Burns the plaintiff seeks compensatory damages for the period of time he yielded to police commands to the point of his death at hands of the police;

and for the costs associated with his burial and related expenses, as well as punitive and exemplary damages according to proof;

2.  As to the remaining Plaintiffs, John and Tammy Burns and Bobby Lawrence, compensatory damages for economic and non- economic harm to plaintiffs against the Individual Defendants, the City of Concord, jointly and severally;

3.  Punitive and exemplary damages against individual defendants according to proof;

4.  Costs incurred in the prosecution of this complaint;

5.  Reasonable attorney's fees on all relevant causes of action;

6.  Such other and further relief as this Court may deem appropriate.

Dated: January 21, 2016                              _____/S/_____
                                                     Peter Johnson
                                                     Attorney for Plaintiffs


PLAINTIFF HEREBY DEMANDS A JURY TRIAL


Dated: January 21, 2016

                                                     _____/S/_____
                                                     Peter Johnson
                                                     Attorney for Plaintiffs