UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOHN BURNS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CONCORD, et al., <br><br> Defendants. | Case No. 3:14-cv-00535-LB <br><br> **AMENDED ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTIONS TO DISMISS** <br><br> Re: ECF Nos. 110, 111, 115 |

## INTRODUCTION

This is a civil-rights lawsuit arising from the fatal shooting of Charles Burns by Concord police officers and their arrest and detention of Bobby Lawrence. (*See* Fourth Amended Complaint ("FAC"), ECF No. 109.[1]) The complaint charges that the Concord police conducted an undercover investigation of Mr. Burns, created an exigency that they used to justify a firing-squad shooting of him, and then arrested, detained, and (with cohorts from the Antioch police department and the district attorney's office) interrogated Mr. Lawrence in order to create a false statement from him that matched their cover-up narrative of the events, in violation of the Fourth and Fourteenth Amendments to the United States Constitution. (*Id.* ¶¶ 33-35, 39-42, 45, 51-53, 66(i), 66(j).) The

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the top of documents.

AMENDED ORDER (No. 3:14-cv-00535-LB)

complaint also charges battery in the form of the shooting of Mr. Burns. (*Id.* at 37.) The court's previous orders summarize the factual allegations in detail (*see, e.g.*, ECF No. 82); the FAC does not alter them materially and instead adds allegations to add or bolster claims against certain individual defendants. Some of those defendants move to dismiss claims against them under Federal Rule of Civil Procedure 12(b)(6).

First, Contra Costa County deputy district attorney Kevin Bell moves to dismiss a) claim two, which charges him (and the Concord police officers at the shooting) with conspiracy to violate the Fourth and Fourteenth Amendment by their unlawful seizure of Mr. Burns, use of excessive force against him, and deliberate indifference to his medical needs, and b) claim four, which charges him (and the same Concord police officers) with violating the Fourteenth Amendment by their use of force. (ECF No. 115.)

Second, district attorney's office investigator John Conaty and Antioch police officer James Stenger move (in separate motions) to dismiss claim three, which charges them with an unlawful detention of Mr. Lawrence in violation of the Fourth Amendment. (ECF Nos. 111, 115.) Claim three names other law-enforcement defendants too. Three of them are deputy district attorney Barry Grove, Concord police lieutenant David Hughes, and Antioch police sergeant Anthony Morefield; they were the supervisors that night, and they also move (in separate motions) to dismiss count three. (ECF Nos. 110, 111, 115.)

The court finds this matter suitable for determination without oral argument under Civil Local Rule 7-1(b) and vacates the March 17 hearing. The matter remains on calendar for a case-management conference at 11 a.m. The court denies Mr. Bell's motion to dismiss claim three as to the Fourth Amendment claim but grants it as to the Fourteenth Amendment claim of deliberate indifference to medical needs. The court denies Mr. Bell's motion to dismiss claim four. The court denies Mr. Conaty's and Mr. Stenger's separate motions to dismiss claim three. The court grants Mr. Grove's, Mr. Hughes's, and Mr. Morefield's separate motions to dismiss claim three.

**STATEMENT**

The FAC does not differ materially from the previous third amended complaint ("TAC"). The court's last order addressing motions to dismiss the TAC recounts the investigation and shooting

AMENDED ORDER (No. 3:14-cv-00535-LB)   2

of Mr. Burns in May 2013 and the contemporaneous detention and interrogation of Mr. Lawrence. (*See* ECF No. 82.) The following chart summarizes the claims in the FAC.

| No. | Claim | Named Plaintiff | Named Defendant |
|---|---|---|---|
| 1 | 42 U.S.C. § 1983 − 4th Amendment (unlawful seizure and excessive force) and 14th Amendment (deliberate indifference to provision of emergency medical care) | Estate of Charles Burns | **Concord Officer defendants**:<br>1. Loercher<br>2. Ramirez<br>3. Hansen<br>4. White<br>5. Giacobazzi<br>6. Miovas<br>7. Cain<br>8. Switzer |
| 2 | 42 U.S.C. § 1983 − Conspiracy to violate civil rights: 1) 4th Amendment (unlawful seizure and excessive force) and 2) 14th Amendment (deliberate indifference to provision of emergency medical care) | Estate of Charles Burns | Concord Officer defendants plus Kevin Bell |
| 3 | 42 U.S.C. § 1983 − 4th amendment: false arrest/imprisonment, excessive force, detention | Bobby Lawrence | All individual, non-entity defendants except Mr. Bell |
| 4 | 42 U.S.C. § 1983 − 14th Amendment rights to familial association | John and Tammy Burns (Mr. Burns's mother and father) | Concord Officer defendants plus Mr. Bell |
| 5 | 42 U.S.C. § 1983 (*Monell*) (ratification, training) | All plaintiffs | City of Concord |
| 6 | Battery | Estate of Charles Burns | Concord Officer defendants |

The complaint groups the defendants generally into the following categories: 1) the Concord officers involved with the undercover operation that led to Mr. Burns's shooting and Mr. Lawrence's detention (identified collectively in the complaint as the "Concord Officer Defendants"); 2) Kevin Bell, the deputy district attorney who worked with the Concord officers before the actual operation and was there during its execution; 3) the three investigators (district attorney's office investigator John Conaty, Antioch police officer James Stenger, and Concord police officer Tom Parodi) who interrogated Mr. Lawrence and who coordinated taking statements from the actual shooters (identified collectively in the complaint as the "Team 1 Investigators"); and 4) the three managers that the three entities (Concord PD, Antioch PD, and Contra Costa County DA) assigned on the day of the incident, specifically, deputy district attorney Barry Grove, Concord police lieutenant David Hughes, and Antioch police sergeant Anthony Morefield

AMENDED ORDER (No. 3:14-cv-00535-LB)   3

1  (identified collectively in the complaint as the "Three Point Men"). (FAC ¶¶ 9-25.) Six defendants
2  moved to dismiss claims in the FAC; collectively the motions are as follows: 1) Mr. Bell moves to
3  dismiss claim two and claim four, 2) the "Team 1 Investigators" Conaty and Stenger move to
4  dismiss claim three; and 3) the "Three Point Men" Grove, Hughes, and Morefield also move to
5  dismiss claim three. (ECF Nos. 110, 111, 115.) Additional factual allegations about their
6  individual liability are in the claim-by-claim analysis, below.

## GOVERNING LAW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

AMENDED ORDER (No. 3:14-cv-00535-LB)    4

# ANALYSIS

**1. Mr. Bell's motion to dismiss**

Mr. Bell moves to dismiss the conspiracy claim (claim two) and the Fourteenth Amendment claim (claim four) for failure to plead sufficient facts to establish his involvement. (Motion, ECF No. 115 at 17-22.)

**1.1 Conspiracy claim (claim two)**

Mr. Bell contends that that the complaint does not plead sufficient facts to establish his agreement with the Concord police offices. (*Id.* at 17.) The court previously found sufficient facts sufficient to establish a conspiracy that involved the Concord police officers and Mr. Bell. (Order, ECF No. 82 at 18-20.) The FAC supersedes the previous third amended complaint ("TAC") and "renders it without legal effect." *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 927 (9th Cir. 2012) (en banc); *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (same). Thus, Mr. Bell may challenge the claim. *See O'Connor v. Uber Techns., Inc.*, 58 F. Supp. 3d 989, 995-96 (N.D. Cal. Sept. 4, 2014) (collecting cases).

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999)). An agreement need not be overt and "may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* (quotation omitted). "Whether defendants were involved in an unlawful conspiracy is generally a factual issue." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301-02 (citation omitted). Nevertheless, "the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (quotation omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe*, 608 F.3d at 440 (quoting *United Steelwokers of Am v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)).

The complaint alleges that Mr. Bell and the Concord police officers involved in the shooting "planned a surveillance and undercover operation with the intent of arresting and harming Charles

AMENDED ORDER (No. 3:14-cv-00535-LB)   5

Burns." (FAC ¶ 33.) They met before the "killing" on more than one occasion, "planned the takedown," and "sought to justify their conduct by trumping up [Mr. Burns's] level of sophistication and criminality," which resulted in a warrant that contained "falsified information." (*Id.* ¶ 68(c).) Ties to a non-existent gang were alleged even though Burns was not in a gang and had only minor convictions for a DUI and petty theft. (*Id.* ¶ 68(c) and (e).) The police officers sought Mr. Bell's "assistance . . . due to his assignment at the Contra Costa District Attorney's Office in gathering information to assign a falsely high and falsely dangerous level of criminality and risk associated with Charles Burns. Criminal acts, which were not in fact attributable to Burns, were none-the-less attributed to him." (*Id.* ¶ 68(c).) Mr. Bell "assisted in obtaining this information through his resources with other law enforcement agencies and the District Attorney's Office and facilitated the plan and operation to take Burns down." (*Id.*) "[Mr.] Bell met with and conferred with [Officer] Hansen two weeks prior to the subject incident and then again the day prior to and the day of the execution of Burns." (*Id.* ¶ 35.) "Despite knowledge that Burns was not a gang member[,] [Mr. Bell] sought to assist [Officer] Hansen in fabricating a claim that Burns was a gang member in order to justify an escalated police presence and use of force in service of a warrant on Burns." (*Id.*)

The complaint thus describes how the defendants worked together before the shooting to collect the information and twisted and fabricated it to engage in the operation (resulting in a search warrant and falsely escalating the perceived risk). (*Id.* ¶¶ 35, 68(c)-(e).) It then describes how the officers walled off streets before the incident to avoid any witnesses to their acts and engaged in other conduct to further escalate the perceived risk—including ramming Mr. Lawrence's car while he was driving it (despite knowing that the car was registered to Mr. Lawrence and that he had no criminal history)—to justify their shooting of Mr. Burns, who was a passenger in the car. (*Id.* ¶¶ 68(f)-(h).) The plan "included secrecy and failure of identification [meaning, the officers failed to identify themselves in the undercover operation] which the defendants knew would likely trigger hesitation on the part of Burns which they would use to justify their use of excessive and ultimately lethal force." (*Id.* ¶ 68(g).) The officers made "no effort made to identify themselves" when they rammed Mr. Lawrence's car several times. (*Id.* ¶

68(h).) Mr. Bell "was just a matter of several feet away when Burns was executed;" he "stood by and watched" as a police dog attacked Mr. Burns's body; and he made no effort to intervene or help Mr. Burns. (*Id.* ¶¶ 36-37.)

Mr. Bell contends that the complaint's allegations are too conclusory because they do not allege "what Bell and Hansen discussed, what agreements they made, or what information Bell allegedly provided to Hansen." (ECF No. 115 at 17.) He also disputes the court's prior tethering of the claim against him to the warrant and asks the court to take judicial notice of the warrant itself, pointing out that it does not contain any of the alleged false information. (*Id.* at 18.) The court considers the warrant under the incorporation-by-reference theory. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). (The court does not assume the truth of the facts in warrant.) Mr. Bell also disputes that he was an integral participant, pointing out that he is not a police officer and was not involved in the actual seizure and shooting. (*Id.* at 19-20.)

The complaint's allegations are sufficient at the pleadings stage. A plaintiff does not need to plead all of her evidence; the standard still is plausibility and fair notice of the claim. *See* Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. And a plaintiff may show a conspiracy by circumstantial evidence. *See Crowe*, 608 F.3d at 440. Considering the complaint as a whole (and all the allegations), the complaint states a claim against Mr. Bell for conspiracy based unlawful seizure and excessive force, in violation of the Fourth Amendment. His challenge to the claim is better addressed at summary judgment.

To the extent that the complaint alleges a conspiracy claim against Mr. Bell predicated on his deliberate indifference to the provision of emergency medical care to Mr. Burns in violation of the Fourteenth Amendment, that claim is not plausible, and the court dismisses it. The allegations do not show his deliberate indifference, given his undisputed role during the actual shooting as an observer.

**1.2 Fourteenth Amendment claim (claim four)**

In claim four, Mr. Burns's parents allege a violation of their Fourteenth Amendment right to familial association resulting from the use of lethal force against their son by the Concord Officer

AMENDED ORDER (No. 3:14-cv-00535-LB)    7

Defendants and Mr. Bell. (FAC ¶¶ 78-81.) For the reasons stated in the court's prior order at ECF No. 82, the complaint's allegations are sufficient.

Mr. Bell also argues that Mr. Burns was 20 and an adult, and thus his parents cannot assert loss of companionship. He cites no authority supporting that conclusion. And in *Johnson v. Bay Area Rapid Transit District*, the Ninth Circuit acknowledged cases that "have recognized a parent's right to a child's companionship without regard to the child's age." 724 F.3d 1159, 1169 (9th Cir. 2013) (citing *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987) (familial relationship gives rise to parents' right to the companionship of adult children, not "the more narrow custodial interest of the parents"); *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1080 (S.D. Cal. 1994) ("The parent's constitutionally protected interest is not extinguished as a matter of law when an adult child leaves his parents' home and marries. The parent of such a child may state a cause of action under § 1983 when she alleges that the state terminated her parent-child relationship without due process of law.")).

## 2. Arrest and detention of Mr. Lawrence (claim three)

Claim three charges all individual defendants (except Mr. Bell) with the wrongful arrest and detention of Mr. Lawrence. Five defendants move to dismiss claim three: 1) Contra Costa County district attorney's office investigator John Conaty and Antioch police officer James Stenger, who interrogated Mr. Lawrence (with co-defendant Concord police officer Tom Parodi); and 2) deputy district attorney Barry Grove, Concord police lieutenant David Hughes, and Antioch police sergeant Anthony Morefield, who were the three supervisors from the three law-enforcement entities (Concord PD, Antioch PD, and Contra Costa County DA) assigned on the day of the incident. (ECF Nos. 110, 111, 115.)

Preliminarily, the claims against all five defendants generally are not predicated on their involvement in the initial seizure and arrest of Mr. Lawrence and instead are limited to his continued detention. There are no allegations about any involvement by Messieurs Conaty and Stenger in the arrest. The complaint does assert that the "Three Point Men" Grove, Hughes, and Morefield "were directly involved in the decision to arrest [Mr.] Lawrence" and "showed up at the scene and . . . directed the operation to cover up the illegal conduct of the Concord Police Officers

AMENDED ORDER (No. 3:14-cv-00535-LB)   8

and the resulting violations of the constitutional rights of Charles Burns and Bobby Lawrence." (*Id.* ¶¶ 30, 45.) These allegations are conclusory. The court dismisses claim three against all five defendants to the extent that the claim is predicated on the initial seizure and arrest.

**2.1 The investigators**

The remaining claim against the two investigators is predicated on their knowledge of Mr. Lawrence's unlawful arrest and their facilitation of his continued unlawful detention.

Generally, it is the person responsible for the arrest who is liable in a section 1983 action for an unconstitutional arrest. *See Coello v. City of Hermosa Beach*, No. CV 07-6900-PSG (SSX), 2009 WL 426408, at *5 (C.D. Cal. Feb. 19, 2009). That said, a person who is integrally part of continued unlawful action or who acts affirmatively to deprive someone of his constitutional rights can be liable. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007); *Coello*, 2009 WL 426408, at *5 ("Other circuits have held that a jailer is liable for illegal detention when he possess[es] an affirmative knowledge of the illegality of the arrest, but is not culpable when he acted reasonably and in good faith."); *Wood v. Woracheck*, 618 F.2d 1225, 1231 (7th Cir. 1980); *McConney v. City of Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989). The issue is one of causation: a mere bystander cannot be liable but someone fundamentally involved in a constitutional violation is liable. *See Blankenhorn*, 485 F.3d at 481 n.12.

The three investigators are district attorney's office investigator John Conaty, Antioch police officer James Stenger, and Concord police officer Tom Parodi (referred to in the complaint as "Team 1" and referred to here as "investigators"). Messieurs Conaty and Stenger move to dismiss the claim; Officer Parodi did not. The allegations are that the investigators acted collectively to isolate the shooters in hotel rooms and detain Mr. Lawrence illegally to interrogate him inappropriately (by blaming him for Mr. Burns's death, screaming at him, and intimidating him) to fabricate a story overall and to coax Mr. Lawrence "into providing a statement that would conceal the true unlawful and heinous conduct of their fellow law enforcement personnel, and cast blame on Lawrence and Burns." (*Id.* ¶¶ 40, 48.) They also falsified audio and written documentation of the events:

> Team 1 created an audio recording of the subject interview using a digital recording device. They each then proceeded to manipulate the recording during the course of the investigation, as well as not recording portions of the interview. By doing so they fabricated a statement that contains information out of context in order to produce a statement that would attempt to justify the conduct of the offending officers. They then produced a falsified written investigative report in order to cover-up the illegal conduct of their fellow law 'enforcement' personnel.

(*Id.* ¶ 41.) Officer Stenger additionally "prepar[ed] a probable cause declaration fraught with material omissions and misrepresentations" to justify taking Mr. Lawrence to county jail, "as opposed to releasing him from custody in Antioch." (*Id.* ¶ 40.)

The court considers these allegations in the context of the entire complaint, including the circumstances of Mr. Lawrence's arrest. (*See generally id.* ¶¶ 33, 39.) As a result, taking these allegations as true and in the light most favorable to Mr. Lawrence, they support a claim that the investigators continued Mr. Lawrence's detention not because of probable cause, but because of ulterior, unlawful motives. Mr. Lawrence has thus raised a plausible claim that the investigators were "aware that there was no probable cause to arrest" or continue Mr. Lawrence's detention. (*Id.* ¶ 40.) The court cannot conclude as a matter of law at the pleadings stage that these non-arresting officers acted reasonably, in good faith, and without knowledge of the illegality of the arrest, or that they are entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Coello*, 2009 WL 426408, at *5. That determination is better suited for summary judgment.

**2.2 The supervising "Point Men"**

Mr. Lawrence's claim against Messieurs Grove, Hughes, and Morefield is not predicated on *respondeat superior* liability but instead is predicated on their personal participation in the investigation and detention of Mr. Lawrence. (*See* FAC ¶¶ 30, 40, 45.)

"Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Bedford v. City of Hayward*, No. 3:12-cv-00294-JCS, 2012 WL 4901434, at *10 (N.D. Cal. Oct. 15, 2012) (quoting *Preschooler II v. Clark Cnty. Sch. Bd. of Trustee*, 479 F.3d 1175, 1182 (9th Cir. 2007)) (internal quotations and brackets omitted). "A supervisor may be held liable for 1) his own culpable action or inaction in the training, supervision, or control of his subordinates, 2) for his acquiescence in the

AMENDED ORDER (No. 3:14-cv-00535-LB)   10

1  constitutional deprivations of which the complaint is made, or 3) for conduct that showed a
2  reckless or callous indifference to the rights of others." *Id.* (quoting *Larez v. City of Los Angeles*,
3  946 F.2d 630, 646 (9th Cir. 1991)) (internal quotations omitted). Supervisory liability "depends
4  upon whether he set in motion a series of acts by others, or knowingly refused to terminate a series
5  of acts by others, which he knew or reasonably should have known, would cause others to inflict
6  the constitutional injury." *Blankenhorn*, 485 F.3d at 485 (quoting *Watkins v. City of Oakland*, 145
7  F.3d 1087, 1093 (9th Cir. 1998)) (internal quotations omitted).

    The issue is whether Mr. Lawrence has alleged sufficient facts to state a plausible claim against the individual supervisors based on their actions that day. He alleges that they showed up at the scene of Charles Burns's death and "directed" the cover-up of Burns's death and Mr. Lawrence's arrest and detention. (FAC ¶ 45.) They used their "authority to coordinate a concerted effort to illegally keep Lawrence in custody, use him as a pawn for their scheme to cover up the defendants constitutional violations, send him to jail, base[d] on falsified information[,] and cause him to post an expensive bail in order to be released from custody." (*Id.* ¶ 46.) They were thus "directly involved" in the decision to arrest, detain, and interrogate Mr. Lawrence. (*Id.* ¶ 30.) Finally, they "directly ordered that [Mr.] Lawrence be incarcerated in County Jail, despite their knowledge that he had not committed a crime and despite their knowledge that the Concord Police Officers illegally detained [him] and used excessive force against [him]." (*Id.* ¶ 30.) They made this decision "as a management level team . . . [instead of] releasing [Mr. Lawrence] from custody." (*Id.* ¶ 40.)

    He argues that the supervisors acted in concert with the "Team 1" investigators. "Throughout the course of [the interrogation] they were informed by Team 1 . . . as to the statements being elicited from [Mr.] Lawrence and were informing Team 1 what information they would need to elicit from Lawrence" to protect the Concord officers. (*Id.* ¶ 30.) "Team 1 acting in concert with one another under the direction of [the] Three Point Men . . . placed Ramirez and Loercher in . . . hotel rooms and ensured they were represented by legal counsel." (*Id.* ¶ 48.) "Team 1 along with the Three Point Men provided the officers information to help shape their statements and then conducted only audio recordings and purposely avoided video recordings of the statements in a

AMENDED ORDER (No. 3:14-cv-00535-LB)   11

manner to optimize the opportunity to fabricate their version of the events." (*Id.* ¶ 48.)

These generally are conclusory allegations, not factual ones. It is not enough to say they "were involved in" Mr. Lawrence's detention, "directed the operation", and "knew" that Mr. Lawrence had not committed a crime. And his allegations about the supervisors' interactions with the investigators boil down to, the investigators acted under the "direction of" the supervisors and— "along with the Three Point Men"—provided information to the shooter-officers. The court can conclude that the complaint plausibly alleges that the investigators detained Mr. Lawrence unlawfully. It cannot conclude that about the supervisors. The allegations about them are vague and conclusory and do not raise a plausible inference that the supervisors participated in the conduct or acted unreasonably, in bad faith, or with knowledge of his illegal detention. *See Coello*, 2009 WL 426408, at *5. Rather, the allegations show supervisory police functions. *See Iqbal*, 556 U.S. at 682 (a claim is not plausible if it raises an "obvious [legal] alternative explanation").

### 2.3 Dismissal with or without prejudice; Doe defendants

The issue is whether the dismissal is with or without prejudice. There is the related issue too of whether the court should dismiss the Doe defendants, as Contra Costa County counsel asks. (ECF No. 115 at 22.)

At the initial case-management conference, the court set deadlines to allow 1) the plaintiffs to conduct discovery, 2) the parties to engage in settlement conferences before fact discovery ended, and 3) the plaintiffs to amend the pleadings under a Rule 15(a) standard to conform them to discovery. That has not happened: the parties have postponed their ENE, and the plaintiffs appear to be struggling to identify the key participants, despite the court's efforts to stage the litigation. Under the circumstances, the court will not dismiss the claims against the supervisors with prejudice or dismiss the Doe defendants. But the plaintiffs will have to show good cause under Federal Rule of Civil Procedure 16(b) for any further amendments, given that the deadline for amending the pleadings was in January.

## CONCLUSION

The court denies Mr. Bell's motion to dismiss claim two to the extent that it is based on a Fourth Amendment claim of excessive force, grants his motion to dismiss claim two to the extent

AMENDED ORDER (No. 3:14-cv-00535-LB)   12

that it is based on a Fourteenth Amendment claim of deliberate indifference to medical needs, and denies his motion to dismiss claim four.

The court denies Mr. Conaty's and Mr. Stenger's separate motions to dismiss claim three. The theory of liability is limited to the claim of the wrongful detention of Mr. Lawrence.

The court grants Mr. Grove's, Mr. Hughes's, and Mr. Morefield's separate motions to dismiss claim three.

**IT IS SO ORDERED.**

Dated:  March 17, 2016

LAUREL BEELER
United States Magistrate Judge